IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
Greenbelt Division

| | |
|---|---|
| Judekenneth Maduka Orji | * |
| 2008 Mapleleaf Pl. | * |
| Upper Marlboro, Maryland 20774 | * |
|   Plaintiff, | * |
|   VS. | * |
| Citadel Securities, LLC | * |
| 200 S Biscayne Blvd, Suite 3300 | * |
| Miami, Florida 33131 | * |
| | * |
| Goldman Sachs & Co. LLC | * |
| 200 West Street | * |
| New York, New York 10282 | * |
|   c/o Resident Agent | * |
|   The Corporation Trust, Incorporated | * |
|   2405 York Road, Suite 201 | * |
|   Lutherville, Timonium MD 21093 | * |
| | * |
| GTS Securities, LLC | * |
| 545 Madison Avenue | * |
| New York, New York 10022 | * |
| | * |
| VIRTU Americas, LLC | * |
| 1633 Broadway Avenue | * |
| New York, New York 10019 | * |
| | * |
| Canaccord Genuity, Inc. | * |
| 535 Madison Avenue | * |
| New York, New York 10022 | * |
| | * |
| Susquehanna Securities, Inc. | *Case No._____ |
| 401 City Avenue, Suite 220 | * |
| Bala Cynwyd, PA 19004 | * Jury Trial requested |
| | * |
| Cowen & Company, LLC | * |
| 599 Lexington Avenue | * |
| New York, New York 10022 | * |
| | * |
| Robert W. Baird & Co., Inc. | * |
| 777 E Wisconsin Avenue | * |
| Milwaukee, Wisconsin 52302 | * |
|   c/o Resident Agent | * |
|   CSC-Lawyers Incorporating Services Company | * |
|   7 St. Paul St. Suite 820 | * |
|   Baltimore, Maryland 21202 | * |

                                                            *
IMC Financial Markets, LLC                                  *
233 South Wacker Drive, Suite 4300                          *
Chicago, Illinois 60606                                     *
                                                            *
Latour Trading, LLC                                         *
148 Lafayette St., 11th Floor                               *
New York, New York 10013                                    *
                                                            *
G1 Execution Services LLC                                   *
175 W Jackson Blvd. Suite 1700                              *
Chicago, Illinois 60604                                     *
                                                            *
Cantor Fitzgerald & Co.                                     *
110 East 59th Street, 4th Floor                             *
New York, New York 10022                                    *
                                                            *
Two Sigma Securities, LLC                                   *
100 Avenue of the Americas, 2nd Floor                       *
New York, New York 10013                                    *
                                                            *
SG Americas Securities, LLC                                 *
245 Park Avenue                                             *
New York, New York 10167                                    *
                                                            *
Morgan Stanley & Co., LLC                                   *
1585 Broadway                                               *
New York, New York 10036                                    *
          c/o Resident Agent                                *
          The Corporation Trust, Incorporated               *
          2405 York Road, Suite 201                         *
          Lutherville Timonium, Maryland 21093              *
                                                            *
J. P. Morgan Securities, LLC                                *
383 Madison Avenue                                          *
New York, New York 10179                                    *
          c/o Resident Agent                                *
          The Corporation Trust, Incorporated               *
          2405 York Road, Suite 201                         *
          Lutherville Timonium, Maryland 21093              *
                                                            *
Clear Street, LLC                                           *
150 Greenwich Street, 45th Floor                            *
New York, New York 10007                                    *
                                                            *
Stifel, Nicolaus & Co., Inc.                                *

2

500 North Broadway                                         *
St. Louis, Missouri 63102                                  *
    c/o Resident Agent                 *
    The Corporation Trust, Incorporated *
    2405 York Road, Suite 201           *
    Lutherville Timonium, Maryland 21093 *
                                                       *

Wells Fargo Securities, LLC                                *
2711 Centerville Road                                      *
Willington, Delaware 19808                                 *
    c/o Resident Agent                 *
    CSC-Lawyers Incorporating Services Company *
    7 St. Paul St. Suite 820            *
    Baltimore, Maryland 21202           *
                                                       *

William Blair, LLC a/k/a William Blair & Co., LLC          *
111 S. Calvert St.                                         *
Baltimore, Maryland 23202                                  *
    c/o Resident Agent                 *
    The Corporation Trust, Incorporated *
    2405 York Road, Suite 201           *
    Lutherville Timonium, Maryland 21093 *
                                                       *

UBS Securities, LLC                                        *
1285 Avenue of the Americas                                *
New York, New York 10019                                   *
    c/o Resident Agent                 *
    CSC-Lawyers Incorporating Services Company *
    7 St. Paul St. Suite 820            *
    Baltimore, Maryland 21202           *
                                                       *

Keefe, Bruyette & Woods, Inc.                              *
787 7th Avenue                                           *
New York, New York 10019                                   *
                                                       *

BOFA Securities, Inc.                                      *
NCI-028-17-06                                              *
150 N. College St.                                         *
Charlotte, North Carolina 28255                            *
    c/o Resident Agent                 *
    The Corporation Trust, Incorporated *
    2405 York Road, Suite 201           *
    Lutherville Timonium, Maryland 21093 *
                                                       *

Maxim Group, LLC                                           *
300 Park Avenue                                            *

New York, New York 10022                              *
                                                      *
Keybanc Capital Markets, Inc.                         *
127 Public Square                                     *
Cleveland, Ohio 44114                                 *
        c/o Resident Agent                            *
        CSC-Lawyers Incorporating Services Company    *
        7 St. Paul St. Suite 820                      *
        Baltimore, Maryland 21202                     *
                                                      *
StoneX Financial Inc.                                 *
329 Park Avenue North, Suite 350                      *
Winter Park, Florida 32789                            *
        c/o Resident Agent                            *
        Corporate Creations Network Inc.              *
        2 Wisconsin Circle, # 700                     *
        Chevy Chase, Maryland 20815                   *
                                                      *
Puma Capital, LLC                                     *
555 Theodore Fremo Avenue, Suite C204                 *
Rye, New York 10580                                   *
                                                      *
HRT Financial, LP                                     *
3 World Trade Center, 175 Greenwich Street            *
76th Floor                                            *
New York, New York 10007                              *
                                                      *
Flow Traders US Institutional Trading, LLC            *
1114 Avenue of the Americas, 4th Floor                *
New York, New York 10036                              *
                                                      *
Wolvering Trading, LLC                                *
175 W Jackson Street, Suite 200                       *
Chicago, Illinois, 60604                              *
                                                      *
Webull Financial, LLC                                 *
44 Wall Street, Suite 501                             *
New York, New York 10005                              *
        Defendants.                                   *
**************************************************************************

## COMPLAINT AND REQUEST FOR JURY TRIAL

### THE NATURE OF THE CASE

NOW COMES the Plaintiff, Judekenneth Maduka Orji, by and through the

undersigned counsel, G. Emeka Onwezi, and alleges against the above-captioned defendants and states as follows:

1.     This case arises from a conspiracy, fraud, breach of contract and anticompetitive scheme by Market Makers[1] or Market Participants of the New York Stock Exchange ("NYSE"), The Chicago Board Options Exchange ("CBOE"), The Nasdaq Stock Exchange ("NASDAQ"), and other stock exchanges who are named herein as Defendants Citadel Securities, LLC; Goldman Sachs & Co., LLC; GTS Securities, LLC; Canaccord Genuity, Inc.; Susquehanna Securities, Inc.; Cowen & Company, LLC; Robert W. Baird & Co., Inc.; IMC Financial Markets, LLC; Latour Trading, LLC; G1 Execution Services, LLC; Cantor Fitzgerald & Co.; Two Sigma Securities, LLC; SG American Securities, LLC; Morgan Stanley & Co, LLC; J. P. Morgan Securities, LLC; Clear Street, LLC; Stifel, Nicolaus & Co., Inc.; Wells Fargo Securities, LLC; William Blair, LLC a/k/a William Blair & Co., LLC; UBS Securities, LLC; Keefe, Bruyette & Woods, Inc.; BOFA Securities, Inc.; Maxim Group, LLC; Keybanc Capital Markets, Inc.; StoneX Financial Inc.; PUMA Capital, LLC; HRT Financial, LP; Flow Traders US Institutional Trading LLC; and Wolverine Trading, LLC (collectively "MM Defendants") to hack into and access Plaintiff's computers, mobile phones, e-mail addresses, text messages, network router and electronic devices ("Personal Devices") without authorization, stalk and monitor Plaintiff on these devices, obtain financial records and other data, and deceive and defraud Plaintiff by fixing, paralleling, manipulating the quotations and prices of the securities in his brokerage accounts, causing over one million dollars ($1,000,000) in damages from September 1, 2021,

---

[1] A market maker is "a dealer who, with respect to a particular security, (i) regularly publishes bona fide, competitive bid and offer quotations in a recognized interdealer quotation system; or (ii) furnishes bona fide competitive bid and offer quotations on request; and, (iii) is ready, willing and able to effect transactions in reasonable quantities at his quoted prices with other brokers or dealers." Securities Exchange Act of 1934, Rule 15c3-1(c)(8), 17 C.F.R. § 240.15c3-1(c)(8).

through the present ("Relevant Period"). Screenshots and video recordings of NASDAQ and NYSE Level II platforms for the Relevant Securities during the Relevant Period revealed the names of the MM Defendants. The names were also listed as Market Participants on NasdaqTrader.com.

2.   Acting in concert with one another, the MM Defendants executed the scheme by willfully and specifically targeting and manipulating equities and options securities in Plaintiff's brokerage accounts especially in four stocks: Lordstown Motors, Inc. ("RIDE/RIDEQ"), Ashford Hospitality Trust, Inc. ("AHT"), Multiplan Corporation, Inc. ("MPLN"), and Genius Group, Inc. ("GNS") ("Relevant Securities"), and engaging in a combination of manipulative trades and quotations, including trades and quotations that had no apparent or explainable economic value, in order to create losses, depress net asset values, inflict emotional distress on Plaintiff, and deceive brokers to issue margin calls and forcefully liquidate securities that were held on margin accounts in Plaintiff's portfolio.

3.   Lordstown Motors filed for bankruptcy protection on June 27, 2023, following its inability to raise money in the financial markets as a result, in part, to the massive shorting and manipulation of the shares pursuant to the fraudulent scheme targeting Plaintiff's portfolio. After Lordstown Motors was delisted from Nasdaq because of the bankruptcy, Citadel, Susquehanna, G1 Execution, VIRTU, Canaccord, and other defendants followed the stock as market makers into the OTC Market under the new ticker, RIDEQ. The MM Defendants continued to access Plaintiff's Personal Devices without authorization, and fraudulently manipulated RIDEQ and the options classes existing in Plaintiff's portfolio using CBOE facilities in furtherance of the scheme.

4.   The anticompetitive conspiracy and scheme described herein were authorized, ordered or

performed by MM Defendants' respective officers, agents, employees, representatives, or shareholders while actively engaged in the management, direction, or control of MM Defendants' businesses or affairs. The objective was to intimidate and defraud Plaintiff, deny any positive returns on his investments, make his portfolio unusable and inoperable, degrade the value of his portfolio, trigger and engineer margin calls on his brokerage accounts, and inflict severe emotional distress and financial hardship on him. The MM Defendants acted as agents of each and one another and are jointly and severally liable for the damages they caused to Plaintiff.

5.   MM Defendants' manipulative scheme violated the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), as well as Rule 10b-5(a) & (c), 17 C.F.R. §§ 240.10b-5(a) & (c) promulgated thereunder[2]; the Computer Fraud and Abuse Act (CFAA) §§ a (2) & (4), 18 U.S.C. §§ 1030(a)(2) & (4); the Sherman Antitrust Act ("Sherman Act") § 1; 15 U.S.C. § 1; and constituted intentional infliction of emotional distress under Maryland State law.

6.   Further, the Plaintiff is suing Defendant Webull Financial, Inc., ("Defendant Webull"), who breached the brokerage contract, among other things, providing margin access without having a system to accurately calculate the account values, breached its fiduciary duty to Plaintiff and engaged in self-dealing by selling away Plaintiff's assets without authorization, deceived and defrauded plaintiff and prevented him from de-risking the portfolio by committing to investigate the manipulation of the portfolio while not having any intention and capacity to conduct the investigation, misrepresented and omitted to provide accurate and proper account values, retaliated against Plaintiff after he demanded an audit, converted account assets and refused to return them when Plaintiff so demanded. Defendant Webull's actions violated

---

[2] The manipulative scheme also contravenes Exchange Act Rule 11b-1(a)(2)(ii)(iii), 17 C.F.R. § 240.11b-1(a)(2)(ii)(iii) (which requires market makers to maintain a "fair and orderly market" for investors). In addition, the scheme violated NASDAQ Rule 782, which prohibits manipulative operations; and Rule 1014(a), which prohibits market makers from making bids or offers that are inconsistent with the maintenance of a fair and orderly market.

Exchange Act § 10(b), 15 U.S.C. § 78j(b), as well as Rule 10b-5(b) & (c), 17 C.F.R. §§ 240.10b-5(b) & (c), constituted breach of fiduciary duty, breach of contract, fraud, intentional misrepresentation, and intentional infliction of emotional distress under Maryland State law.

**JURISDICTION AND VENUE**

7.   This United States District Court for the District of Maryland ("the District") has subject matter jurisdiction pursuant to the Exchange Act § 27, 15 U.S. C. § 78aa and has jurisdiction over the CFAA claims pursuant to 28 U.S.C. § 1331. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over the Maryland State Law claims pursuant to 28 U.S.C § 1367.

8.   This Court has personal jurisdiction over each defendant because they transact business in the District either through the Internet or physical presence. All defendants conduct their businesses with residents throughout the United States. Defendants accessed Plaintiff's Personal Devices located in this District without authorization, and directed their fraudulent activities against Plaintiff, a resident of this District.

9.   Venue is proper in the District of Maryland pursuant to 28 U.S C. § 1391 and 15 U.S. Code § 78aa because the fraud and violations occurred in the District. In executing the fraud, all defendants directly or indirectly used the means of interstate commerce and communication, including facilities of national securities exchanges, the Internet, email system, and telephones, all of which had effect in this District.

**PARTIES**

10. Plaintiff is a resident of Prince Georges' County, Maryland.  During the Relevant Period, Plaintiff invested in his individual accounts or the account of his limited liability company, Stockbaron.com LLC.

11. Defendant Webull Financial, LLC ("Webull"), is a broker-dealer incorporated under the

laws of the State of Delaware, has principal place of business in the State of New York.

12. Citadel Securities, LLC ("Citadel"), was incorporated under the laws of the State of Delaware, has principal place of business in the State of Florida.

13. Goldman Sachs & Co. LLC ("Goldman Sachs"), was incorporated under the laws of the State of New York, has principal place of business in New York.  On September 22, 2023, Goldman Sachs was fined $6 million by the SEC for providing inaccurate trading data.

14. GTS Securities, LLC ("GTS"), was incorporated under the laws of the State of Delaware, has principal place of business in the State of New York.   In 2020, GTS was fined $70,000 for violating short-sale regulations.

15. VIRTU Americas, LLC ("VIRTU"), was incorporated under the laws of the State of Delaware, has principal place of business in the State of New York. In 2020, VIRTU was fined $122,000 by FINRA for violating Order Audit Trail System reporting obligations.

16. Canaccord Genuity, Inc. ("Canaccord"), was incorporated under the laws of the State of New York, has principal place of business in New York.

17. Susquehanna Securities, Inc. ("Susquehanna"), was incorporated under the laws of the State of Delaware, has principal place of business in the State of Pennsylvania.

18. Cowen & Co. LLC, was incorporated under the laws of the State of Delaware, has principal place of business in the State of New York.

19. Robert W. Baird & Co. Inc., was incorporated under the laws of the State of Wisconsin, has principal place of business in Wisconsin.

20. IMC Financial Markets, LLC, was incorporated under the laws of the State of Illinois, has principal place of business in Illinois.

21. Latour Trading, LLC was incorporated under the laws of the State of Delaware, with

principal place of business in the State of New York.

22. G1 Execution Services, LLC, was incorporated under the laws of the State of Illinois, has principal place of business in Illinois.

23.  Cantor Fitzgerald & Co., was incorporated under the laws of the State of New York, has principal place of business in New York.

24. Two Sigma Securities, LLC, was incorporated under the laws of the State of Delaware, has principal place of business in the State of New York.

25. SG Americas Securities LLC, was incorporated under the laws of the State of Delaware, has principal place of business in the State of New York.

26. Morgan Stanley & Co., was incorporated under the laws of the State of Delaware, has principal place of business in the State of New York.

27. J.P. Morgan Securities, LLC, was incorporated under the laws of the State of Delaware, has principal place of business in the State of New York.

28. Clear Street, LLC, was incorporated under the laws of the State of Delaware, has principal place of business in the State of New York.

29. Stifel, Nicholas & Co. Inc., was incorporated under the laws of the State of Missouri, has principal place of business in Missouri.

30. Wells Fargo Securities, LLC, was incorporated under the laws of the State of Delaware, has principal place of business in the State of North Carolina.

31. William Blair, LLC, was incorporated under the laws of the State of Delaware, has principal place of business in the State of Illinois.

32. UBS Securities, LLC, was incorporated under the laws of the State of Delaware, has principal place of business in the State of New York.

33. Keefe, Bruyette & Woods, Inc., was incorporated under the laws of the State of New York, has principal place of business in New York

34. BOFA Securities, Inc., was incorporated under the laws of the State of Delaware, has principal place of business in the State of New York.

35. Maxim Group, LLC, was incorporated under the laws of the State of New York, has principal place of business in New York.

36. Keybanc Capital Markets, Inc., was incorporated under the laws of the State of Ohio, has principal place of business in Ohio.

37. StoneX Financial, Inc., was incorporated under the laws of the State of Florida, has principal place of business in Florida.

38. PUMA Capital, LLC, was incorporated under the laws of the State of Florida, has principal place of business in the State of New York.

39. HRT Financial LP, was incorporated under the laws of the State of Delaware, has principal place of business in the State of New York.

40. Flow Traders U.S. Institutional Trading LLC, was incorporated under the laws of the State of Delaware, has principal place of business in the State of New York.

41. Wolverine Trading, LLC, was incorporated under the laws of the State of Illinois, has principal place of business in Illinois.

**SUBSTANTIVE ALLEGATIONS**

42. Plaintiff is a licensed attorney and invests unused income in brokerage accounts with several brokers. Plaintiff is an unsophisticated investor. In order to obtain valuable stock information, Plaintiff joined and participated in Internet finance forums, social media, online finance boards, and stock forums, including, Yahoo Finance, Google Finance, Investors' Hub, and Stocktwits. Participants post and respond to ideas about various stocks. They frequently post

about stock manipulation by market makers and hedge funds. Plaintiff participated actively in these discussions. Based on personal knowledge and belief, the MM Defendants identified Plaintiff through these stock media forums, followed his discussions, and conspired to target and manipulate his portfolio in order to punish him for his views, deceive and defraud him.

43.   Plaintiff believes that the MM Defendants matched and associated his online posts to his identity using their privileges to such information with the various national securities exchanges. Prior to the Relevant Period, Plaintiff noticed that his portfolio transactions were being stalked by the MM Defendants. The stalking occurred in Plaintiff's transactions in several stocks, including the Relevant Securities. Plaintiff filed a complaint with the SEC in File # 1013149 seeking an investigation. After Plaintiff posted about the SEC complaint on Yahoo Finance, the stalking of his portfolio intensified.

44. In September 2021, Plaintiff's portfolio in all broker accounts consisted of: RIDE, AHT, MPLN, Apartment Investment Management ("AIV"), Globalstar, Inc. ("GSAT"), and Greenidge Generation Holdings, Inc ("GREE"). Plaintiff bought some positions on margin and sold Call Options against all positions to hedge against downside risk. The MM Defendants willfully conspired and  embarked on a scheme to access Plaintiff's Personal Devices without authorization, monitor Plaintiff's communications, email accounts, phone calls, Internet browsing, banking transactions, obtain financial records and specific details of Plaintiff's brokerage account portfolios, and used the data to fix the quotes and gamify the prices of securities in Plaintiff's portfolio, trade and manipulate the Relevant Securities in lockstep, and orchestrate over one million dollars ($1,000,000) in losses and economic damages against Plaintiff during the Relevant Period.

**MM DEFENDANTS OBTAINED ACCESS INTO PLAINTIFF'S DEVICES**

45. On or about September 7, 2021, Plaintiff received email and text messages purporting to

be from Google, Inc., to use a certain code to reset the password of his email account. The email address is the one he used in all official accounts and he did not make any such request. The email requested Plaintiff to click on an embedded link if he did not make the request. Plaintiff clicked the link. Plaintiff received similar messages over the next few days including emails to reset his Facebook and Ebay account passwords. Plaintiff received multiple similar messages from January and February of 2022 after he reset his passwords. Unknown to Plaintiff, the MM Defendants and their agents had already gained access to Plaintiff's Personal Devices  Plaintiff believed that the MM Defendants hacked into his Personal Devices in order to have ongoing real-time access to every transaction and communication in order to stalk and track him, his plans, activities, strategies, monitor the distress and destructive effects of their manipulative activities on his personal life, track his financial records and brokerage transactions, deceive him and his brokers into taking asset-destroying actions, and defraud him.

46. Plaintiff used his mobile phone to monitor stocks in his portfolio through a watchlist application from his Tradestation brokerage account ("Watchlist"). The Watchlist is a blank template that account holders input stocks that they want to track and monitor. If the template was modified, the modified input became private to the brokerage account and known only to the account holder or someone with access to it. Plaintiff created his Watchlist with RIDE as the first stock, followed by AHT, MPLN, AIV, GSAT, and later, GREE, in that order. The Watchlist contained sixteen stocks in total. On or about September 8, 2021, Plaintiff observed that all quotation prices on RIDE, AHT, MPLN, and AIV suddenly disappeared and the columns grayed out on the Watchlist. The other twelve stocks in the application displayed the usual prices. After shutting down and reopening the Watchlist several times, the price quotations reappeared. Plaintiff believed that the MM Defendants coordinated to drop price quotations on the Relevant

Securities in a coded message to him. Plaintiff did not know this fact at that time. The

manipulation reoccurred several times as Plaintiff monitored the Watchlist during the Relevant

Period.

**MM DEFENDANTS USED THE OPTIONS SYSTEM TO DEFRAUD PLAINTIFF**

47. After obtaining financial records of brokerage account details from Plaintiff's computers,

the MM Defendants exploited the options system in order to execute the manipulative scheme

and defraud him. Upon information, the options system, including the CBOE, sets options prices

using a variety of methods, including the midpoint of the bid/ask prices quoted by the MM

Defendants. If no bid prices were quoted, the midpoint would be based on any asking price set

by the MM Defendants. The MM Defendants used this privilege to target the specific options

classes Plaintiff sold as covered calls in his portfolio.

48. As shown in the succeeding paragraphs, the MM Defendants would calculate the sum of

losses to impose on Plaintiff's portfolio values in furtherance of their scheme. They would set an

artificial asking price on the specific options in order to generate the desired loss. The options

system would automatically access an artificial price for the options based on the midpoint of the

asking price set by the MM Defendants. The increased price would create artificial losses on the

portfolio by reducing or eroding portfolio values. On the days when the stocks in the portfolio

were trading higher and the options were actively traded, the MM Defendants would coordinate

to place higher bids on those specific call options to increase their prices beyond the dollar

amount Plaintiff collected as premium when he sold the options. Market Makers are the only

investors permitted to short and hold options securities long at the same time. In either case, the

objective of the MM Defendants was to erode portfolio values beyond margin maintenance

thresholds and/or to impose losses in the portfolio. The MM Defendants used this manipulative

pattern to schematically erode the portfolio values of the Defendant Webull account and reap

economic benefits as Defendant Webull improperly liquidated the securities. They continued to use this manipulative scheme and defraud Plaintiff throughout the Relevant Period.

49. On September 15, 2021, Plaintiff downloaded the Webull desktop application to his computer and started using it to the monitor the portfolio. The MM Defendants remotely accessed the computer and obtained detailed records of the Defendant Webull portfolio. While Plaintiff monitored the application on that day, the MM Defendants began to manipulate the values. At 9.30.04 a.m., the total account value (TAV) was $140,434.54. At 9.30.05 a.m., the MM Defendants manipulated the TAV to $51,315.19, with the day loss displaying as $-115,668.87. The MM Defendants would continue this pattern of manipulation against Plaintiff until the portfolio was sold out on January 27, 2022.

## MM DEFENDANTS COORDINATE TO GAMIFY AND FIX PRICES OF SECURITIES IN PLAINTIFF'S PORTFOLIO AND TRADE THEM IN LOCKSTEP

50. At the same time, the MM Defendants conspired and coordinated to trade in lockstep, fix and gamify the bid, ask, quotation numbers of the Relevant Securities exactly as they appeared on the Watchlist in his mobile phone. Knowledge of the existence, contents and the viewership of the Watchlist was only possible through access to Plaintiff's Personal Devices. The MM Defendants continued to access, view, gamify and manipulate stocks appearing in the Watchlist, and non-public charts in Yahoo Finance and Google Finance created by Plaintiff throughout the Relevant Period. Plaintiff would introduce documented evidence, screenshots, video recordings, computer snips, YouTube Channel videos, and data showing this manipulative pattern.

51. For example, on September 20, 2021, while monitoring the Watchlist, Plaintiff noticed that the bid and ask numbers of four out of the sixteen stocks in his portfolio were being systematically quoted by the MM Defendants to end in parallel or identical numbers. At 2.30 p.m., Plaintiff decided to take a screenshot, showing: RIDE, Last $6.90, Bid $6.89, Ask $6.90; AHT,

Last $13.90, Bid 13.89, Ask $13.91; AIV, Last $6.81, Bid 6.80, Ask $6.81; MPLN, Last $6.11, Bid

$6.10, Ask $6.11. A few seconds later, the MM Defendants rearranged the numbers to: RIDE, Last $6.90,

Bid $6.90, Ask $6.91; AHT, Last $13.90, Bid 13.89, Ask $13.91; AIV, Last $6.81, Bid 6.80, Ask $6.81;

MPLN, Last $6.11, Bid $6.10, Ask $6.11.  These four stocks constituted almost 100% of Plaintiff's

portfolio. The MM Defendants could not have been able to execute this pattern of trade without

access to the Watchlist on Plaintiff's mobile phone. See inserted screenshots.



52. The table below shows some of the number gamifications and parallelism by the MM

Defendants through October 7, 2021. The MM Defendants continued these gamifications

throughout the Relevant Period anytime Plaintiff opened the Watchlist.

| DATE | TIME | TICKER | LAST | BID | ASK | SOURCE |
|---|---|---|---|---|---|---|
| 9/21/2021 | 9:42 A | RIDE | 6.86 | 6.86 | 6.87 | S'shot |
|  |  | AHT | 14.82 | 14.80 | 14.81 | S'shot |
|  |  | MPLN | 5.81 | 5.80 | 5.81 | S'shot |
|  |  | AIV | 6.86 | 6.86 | 6.87 | S'shot |
| 9/23/2021 | 9:57 A | RIDE | 7.19 | 7.18 | 7.19 | S'shot |
|  |  | AHT | 15.17 | 15.18 | 15.19 | S'shot |
|  | 11:44 A | RIDE | 7.36 | 7.36 | 7.37 | S'shot |
|  |  | AHT | 15.37 | 15.36 | 15.37 | S'shot |
|  | 12:42 P | RIDE | 7.46 | 7.46 | 7.47 | S'shot |
|  |  | AHT | 15.46 | 15.46 | 15.47 | S'shot |
|  | 1:22 P | RIDE | 7.39 | 7.39 | 7.40 | S'shot |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | AHT | 15.49 | 15.49 | 15.49 | S'shot |
| | 2:50 P | RIDE | 7.47 | 7.46 | 7.47 | S'shot |
| | | AHT | 15.47 | 15.46 | 15.47 | S'shot |
| | 2:58 P | RIDE | 7.46 | 7.46 | 7.47 | S'shot |
| | | AHT | 15.46 | 15.46 | 15.47 | S'shot |
| | 3:33 P | RIDE | 7.47 | 7.46 | 7.47 | S'shot |
| | | AHT | 15.36 | 15.36 | 15.37 | S'shot |
| | | MPLN | 6.11 | 6.10 | 6.11 | S'shot |
| | | AIV | 7.00 | 7.00 | 7.01 | S'shot |
| 9/24/2021 | 12:29 P | RIDE | 7.67 | 7.66 | 7.67 | S'shot |
| | | AHT | 15.57 | 15.56 | 15.57 | S'shot |
| | | MPLN | 5.97 | 15.56 | 15.57 | S'shot |
| | 2:20 P | RIDE | 7.63 | 7.62 | 7.63 | S'shot |
| | | AHT | 15.43 | 15.42 | 15.43 | S'shot |
| | | MPLN | 5.87 | 5.86 | 5.87 | S'shot |
| | | AIV | 6.87 | 6.87 | 6.88 | S'shot |
| | 3:08 P | RIDE | 7.58 | 7.58 | 7.59 | S'shot |
| | | AHT | 15.58 | 15.58 | 15.59 | S'shot |
| | | MPLN | 5.86 | 5.85 | 5.86 | S'shot |
| | | AIV | 6.89 | 6.88 | 6.89 | S'shot |
| | | GSAT | 1.69 | 1.68 | 1.69 | S'shot |
| 9/27/2021 | 12:16 P | RIDE | 7.71 | 7.70 | 7.71 | S'shot |
| | | AHT | 16.71 | 7.70 | 7.71 | S'shot |
| | | GSAT | 1.75 | 1.75 | 1.76 | S'shot |
| | | GREE | 25.85 | 25.75 | 26.13 | S'shot |
| | 12:39 P | RIDE | 7.71 | 7.70 | 7.71 | S'shot |
| | | AHT | 15.71 | 16.70 | 7.71 | S'shot |
| | | GREE | 26.11 | 26.00 | 26.13 | S'shot |
| 9/30/2021 | 12:41 P | RIDE | 7.92 | 7.91 | 7.92 | S'shot |
| | | AHT | 14.62 | 1.61 | 1.62 | S'shot |
| | | MPLN | 5.51 | 5.51 | 5.52 | S'shot |
| 10/1/2021 | 2:27 P | RIDE | 6.73 | 6.73 | 6.74 | S'shot |
| | | AHT | 15.74 | 15.73 | 15.74 | S'shot |
| | | MPLN | 5.63 | 5.62 | 5.63 | S'shot |
| | | AIV | 7.33 | 7.32 | 7.33 | S'shot |
| 10/4/2021 | 1:00 P | RIDE | 6.01 | 6.00 | 6.01 | S'shot |
| | | AHT | 14.61 | 14.60 | 14.61 | S'shot |
| | | MPLN | 5.60 | 5.59 | 5.60 | S'shot |
| | | AIV | 7.19 | 7.19 | 7.20 | S'shot |
| 10/5/2021 | 2:40 P | RIDE | 5.28 | 5.27 | 5.28 | S'shot |
| | | AHT | 13.88 | 13.87 | 13.88 | S'shot |
| 10/7/2021 | 12:48 P | RIDE | 5.23 | 5.22 | 5.23 | S'shot |
| | | AHT | 14.33 | 14.32 | 14.33 | S'shot |
| | | MPLN | 5.23 | 5.22 | 5.23 | S'shot |
| | | AIV | 7.18 | 7.17 | 7.18 | S'shot |
| | | GSAT | 1.57 | 1.57 | 1.58 | S'shot |
| | 12:51 P | RIDE | 5.22 | 5.21 | 5.22 | S'shot |
| | | AHT | 14.32 | 14.31 | 14.32 | S'shot |
| | | MPLN | 5.22 | 5.21 | 5.22 | S'shot |

**MM DEFENDANTS INTENSIFY PORTFOLIO MANIPULATION**

53. From the second week of October 2021, the MM Defendants intensified the manipulative

scheme against Plaintiff using the options system described in Paragraph 50. For example, at

10.37 a.m. on October 8, 2021, the MM Defendants abruptly cut the total account value in half to

$90,528, with the portfolio showing $90,000 in losses for the day. Similarly, at 9.30 a.m. on

October 18, 2021, the MM Defendants manipulated the account value down to $51,315 creating

a loss of $115,669. Furthermore, on October 19, 2021, during the pre-market session, MM

Defendants manipulated the portfolio values with the total account value showing $110,655 and

manipulated loss of $55,000. Options trading was not open to the public until the market opened

at 9.30 a.m. Only market makers and brokers were able to place bid and ask prices in the pre-

market session.

54. The Defendant Webull's technology was unable to properly calculate the asset values to

discount the arbitrary figures the MM Defendants established on the covered call options in the

account. Thus, Defendant Webull started sending multiple margin call notifications to Plaintiff.

Whenever Plaintiff made the deposit, the MM Defendants would see the transaction through

their access to Plaintiff's Personal Devices and manipulate off the credit. Webull would send

another margin call notice within the next few trading days, repeating the cycle. For example, on

October 6, 2021, Plaintiff deposited $15,000 into the account in an effort to boost the

maintenance margins. The MM Defendants observed the deposit transaction through their access

to Plaintiff's Devices. On October 8, 2023, they manipulated the values as described in

Paragraph 53 to discount the credit.  Plaintiff called Webull two times on October 19, 2021 at

9.37 a.m., and October 27, 2021 at 12.26 p.m. and complained about the manipulation.

55. . On October 21, 2021, Plaintiff filed a complaint with the Federal Trade Commission

Internet Crimes Unit ("FTC"), alleging identity theft and appropriation by the MM Defendants.

By that date, Plaintiff mistakenly believed that the MM Defendants were able to manipulate his

18

portfolio by matching his identity to the stocks using their access to the securities exchanges. Plaintiff did not know and could not have imagined that the MM Defendants had access to his Personal Devices. Plaintiff also filed an identity theft complaint with the Federal Bureau of Investigations iC3 ("FBI").

56. At 9.30 a.m. on October 22, 2021, which was the next day following the FTC and FBI complaints, the total account value jumped from $107,000 where the MM Defendants closed it the previous day to $126,000. On October 25, 2021, which was the second day following the FTC and FBI complaints the account jumped from $102,884 to $124,284 at 9.30 a.m. As a matter of fact, by 9.40 AM, all three positions in the account were down, however, the account value was positive. Prior to filing the FTC/FBI complaints, the MM Defendants sold down the account every trading day as soon as the markets opened. Plaintiff believed that the MM Defendants got cautionary after observing the transmission of the FBI/FTC complaints through their access to the Personal Devices. The MM Defendants paused the early morning manipulations of the portfolio values from this date until the second week of November 2021.

57.  On November 10, 2021, the MM Defendants resumed the manipulation using the same scheme stated in Paragraph 50. At 9.30 a.m. they manipulated the total account value to $96,872. At 9.30 a.m. on November 12, 2021, they manipulated the account value to $75,998. At 9.30 a.m. on November 15, 2021, they manipulated the account value to $86,035 from $114,753. Plaintiff was forced to deposit $6000 to the account. On November 16, 2021, Plaintiff checked the transaction and saw that the Defendant Webull credited the deposit. However, MM Defendants tracked the deposit and manipulated the covered calls to discount the credit. Horrified, Plaintiff deposited $500 more to prevent a margin call.

58. Furthermore, at 9.30 a.m. on November 22, 2021, the MM Defendants manipulated the

account value from $84,148 to $28,083. Plaintiff had to deposit $2,000 to prevent a margin call.

At the opening bell on November 24, 2021, they manipulated the account down from $77,741 to

$23,455. Exasperated, pained, and in immense distress, Plaintiff halted the video recording,

jumped into his vehicle and contemplated harming himself.

### WEBULL'S AUTOMATED SYSTEM FAILED TO CALCULATE ACCOUNT VALUES

59. The wild gyrations caused by the manipulation caused Defendant Webull to arbitrarily

miscalculate the account values, and randomly displayed net asset values that were divulged

from the account positions. Plaintiff complained to Webull on November 11, 2021 that his

account balances were not being updated.  Lucy from Webull's support team replied that there

was no problem. On November 12, 2021, the same day Lucy responded to the complaint, Webull

assessed another "RM" margin call on the account despite its positive buying power. By the next

day, November 13, 2021, Defendant Webull dropped the erroneous RM call.

60. The Defendant Webull's programming technology continued to miscalculate the account

values and caused the defendant Webull to issue multiple margin calls and liquidate portfolio

assets, creating huge losses, including the principal investment. On January 7, 2022, an assistant

director at Webull, Jay Martinez, suggested in an email that the Defendant Webull's technology

was causing "adverse changes" to the net asset values during the day." On January 27, 2022, Jay

Martinez stated that the Defendant Webull's Technology wrongly sold off Plaintiff's assets. On

March 9, 2023, FINRA found that the Defendant Webull's systems had program errors during

the Relevant Period that caused the Defendant Webull to make various mistakes relating to

options accounts.[3]

61. Meanwhile, the MM Defendants intensified the manipulative scheme. At 9.30 a.m. on

---

[3] https://www.finra.org/media-center/newsreleases/2023/finra-fines-webull-3-million-options-customer-approval-violations

November 26, 2021, they manipulated the account value down to $17,654.11. The three stocks in the account were trading higher.  Plaintiff faced imminent financial destruction absent an intervention by regulators and the security services. In that distress, Plaintiff filed another complaint with the SEC, and copied Congressman Anthony Brown, US Senator Chris Van Hollen, Senator Benjamin Cardin, and the Defendant Webull.

### WEBULL COMMITTED TO INVESTIGATING THE MANIPULATION

62. Frank D, on behalf of the Defendant Webull, responded on November 26, 2021, and told Plaintiff that it would "begin to conduct an investigation on your behalf." The Defendant Webull asked Plaintiff to send any other videos, photos, or evidence to add it to their investigation. Relieved, Plaintiff sent the Defendant Webull video recordings made on October 18, 19, 20, 22, and 25. However, on the same day, the Defendant Webull sent Plaintiff a margin call notice for $7,227.93. On Saturday, November 27, 2021, Plaintiff saw a positive value of over $12,000 after the Defendant Webull readjusted the arbitrary options prices of the manipulated covered calls.

63. By Monday, November 29, 2021, the margin call for $7,227.93 was returned, making Plaintiff to believe that the Defendant Webull did not have any intention of investigating the manipulations at the time it committed to it. Upon research, observation, and belief, Weibull knew that it was not going to investigate the complaint as it stated. Further, Webull ought to have known that the account values were being eroded by the abnormal, bizarre, schematic and arbitrary pricing of the covered call options. The Defendant Webull deceived Plaintiff into believing that it was investigating the complaint on his behalf. In 2023, FINRA found "that from May 2018 through December 2021, the Defendant Webull's supervisory system created to identify and respond to customer complaints was not reasonably designed. Among other things, the firm failed to commit the staff and resources necessary to keep pace with the hundreds of thousands of customer communications it received, which included complaints. The firm also did

not report certain written customer complaints to FINRA, as required, including complaints that involved allegations of theft or misappropriation."[4] The Defendant Webull agreed to pay $3 million in fines to FINRA.

**WEBULL PROVIDED FALSE AND MISLEADING "INITIAL OBSERVATIONS"**

64. On December 1, 2021, Plaintiff received an email from the Defendant Webull written by Miles, an Options Account Supervisor. Miles stated: "We are still researching your complaint. I am happy to schedule a call with you today or tomorrow to review your account and some initial observations. At 5.07 p.m., Miles stated that his initial suspicion was that "Options Opening Rotation" could have been responsible for the portfolio value swings. Plaintiff replied that opening rotation could not just repeatedly target the account and affect it in a particular way on a daily basis, or cut the account in half with each opening. Plaintiff also told Miles about video recordings sent to the Defendant Webull showed the portfolio value being manipulated and depressed at various times of the day. Miles then told Plaintiff that the Defendant Webull was still researching the complaint, but wanted to inform him about opening rotations. Miles and Plaintiff later exchanged emails regarding the conversation.

65. The representation by Miles was false.[5] However, as requested by the Defendant Webull, Plaintiff continued to send the broker screenshots and video recordings depicting targeted and systematic daily manipulations of the portfolio values by the MM Defendants. Between November 29, 2021 through January 4, 2022, Plaintiff emailed sixty-six (66) video recordings and data to the Defendant Webull. After the Miles call, the Defendant Webull did not contact Plaintiff nor respond to any of the emails it received until January 4, 2022. In that period, the

---

[4] https://www.finra.org/media-center/newsreleases/2023/finra-fines-webull-3-million-options-customer-approval-violations

[5] Jay Martinez, an associate director at Webull, contradicted Miles on January 4, 2022, stating that the fluctuations in the account value was because Plaintiff sold illiquid leaps as covered calls.

Defendant Webull issued margin calls and sold-off 13,500 AHT shares, and 40,000 RIDE shares at a fraction of the cost, bought back the covered call options at a price set artificially by the MM Defendants, and caused over $200,000 of losses to the portfolio.

**WEBULL SOLD AWAY THE PORTFOLIO WHILE INVESTIGATING IT**

66. On December 3, 2021, with no warning or further contacts or information, the Defendant Webull sold off 13,500 AHT shares out of the 14,100 total holdings in the account. The liquidated shares were all hedged by covered calls, which meant that Webull, working with the MM Defendants, bought back these covered calls at inflated prices. While the recovery value of the AHT shares was about $25, the Defendant Webull only realized about $8 per share after buying back the options, imposing over $100,000 of non-recoverable losses to the portfolio. On that day, the portfolio value was more than the maintenance margin requirement.

67. On December 10, 2021, Plaintiff sent the Defendant Webull an email with a video recorded at 10:37 a.m. Prior to the email, the account value was manipulated down to $14,000. At about 10.25 a.m., Plaintiff posted messages on Yahoo Finance about his new YouTube Channel, ExchangeMarketMakerFraud, and a new website, www.marketmakerfraud.com, which he created to discuss the manipulation of his portfolio. Three minutes after posting the messages, the MM Defendants panicked and jumped the total account value from $14,000 to $37,700 and continued to $41,000 by the fifth minute. On December 15, 2021, Plaintiff posted the link to a video regarding the manipulative scheme on the YouTube Channel. The MM Defendants reacted by manipulating the total account value to negative -$29,000. Plaintiff was mentally devastated and sought help.

68. On December 17, 2021, the Defendant Webull abruptly increased the margin maintenance requirement on RIDE to 1.67 from 2X, and immediately assessed a new $29,000 margin call on the portfolio. Based on the reversal after three days within which the Defendant

Webull sold off RIDE shares, the Defendant Webull increased the RIDE margin maintenance rate in order to assess the $29,000 margin call on the portfolio and sell down the RIDE position. The Defendant Webull had an incentive for self-dealing. The average account value at the Defendant Webull at this time was $25,000. Plaintiff's account value was over $200,000. Moreover, Defendant Webull received over half of its revenue from the MM Defendants in the form of Payment for Order Flow.

69. On December 22, 2021, Plaintiff told the Defendant Webull to stop selling off the portfolio while it was investigating the complaint. Shortly thereafter, the Defendant Webull sold 15,000 RIDE shares, and another 9,000 the next day. After selling 24,000 RIDE shares, The Defendant Webull changed RIDE margin rate back down to 2X from 1.67, exactly where it was three trading days earlier.

70.  On December 23, 2021, Plaintiff decided to reactivate a TD Ameritrade account to reduce the reliance on the Defendant Webull. The MM Defendants tracked the transaction and manipulated the options in the TD Ameritrade portfolio to impose a negative balance of $5,658.82, making it unusable for Plaintiff. The portfolio had $406 in cash and did not have any margin loans prior to the manipulation. Moving forward, the MM Defendants continued to manipulate the TD Ameritrade portfolio values to make it inoperable.

71. On December 28, 2021, the MM Defendants manipulated down the total account value to negative -$33,406 at 9.30 a.m. Meanwhile the prices of the Relevant Securities were stable. At 9.50 a.m., the MM Defendants started gamifying RIDE and AHT as Plaintiff monitored the stocks in his Watchlist. They quoted RIDE prices as Last $3.99, Bid $3.99, Ask $4.00; for AHT, they quoted Last $10.59, Bid $10.58, and Ask $10.60. The gamification continued through 10.20 a.m. After Plaintiff reopened the Watchlist at 1.44 p.m., they resumed, quoting RIDE Bid $3.87,

Ask $3.88; for AHT, Bid $10.37 and Ask $10.38. They continued the manipulation into 2.08 p.m. The next day on December 29, 2021, the MM Defendants sold down the total account value to -$1,655 at 9.30 a.m.

72. As the manipulation intensified Plaintiff would visit Nasdaqtrader.com and see the names of the large, sophisticated companies listed as market participants in the Relevant securities. Plaintiff could not imagine that all the companies would conspire and coordinate to defraud him. He continued to contact regulators and law enforcement in order to investigate the manipulation. His reliance in the efficiency of the US stock markets beclouded him. He invested more money believing that the manipulation would stop. He continued to collect data in order to comprehend the manipulative scheme.

73. On December 30, 2021, Plaintiff sent an email to the Defendant Webull reminding the broker of its commitment and inquiring about the status of the investigation. The Defendant Webull immediately changed the margin requirement for RIDE back to 1.67 from 2X. Using the change, the Defendant Webull issued a new margin call on the account. At about 11.10 a.m., as the Relevant Securities were trading up, the MM Defendants manipulated Plaintiff's total account value to a negative -$3,000. In a video recorded at 11.23 a.m. that day and later posted on YouTube[6], Plaintiff still did not understand how the MM Defendants got the exact details of his portfolio or how they were able to manipulate the values. They closed the account value at $6,000 even though RIDE, at 95% of the portfolio, closed at $3.54.[7]

74. Throughout December 2021, as the Defendant Webull sold away the portfolio assets

---

[6] https://www.youtube.com/watch?v=6MkvfTqx5Us
[7] In contrast. on January 6, 2022, RIDE closed at $3.22, yet the account value closed at about $18,000. Webull's technology was clearly miscalculating the account values due to the manipulative scheme.  Notwithstanding the disconnect between the account values and the prices of the stock that make up the portfolio, Webull claimed in an email to Plaintiff on January 7, 2022, that it calculated account values based on the closing prices of the stock or depreciation in the share prices.

relying on erroneous margin calls that resulted from the schematic manipulation, the MM Defendants continued to coordinate to send coded messages by gamifying and paralleling the prices of the Relevant Securities exactly as they appeared on the Watchlist in Plaintiff's mobile phone. The table below displays selected pricing parallelism by the MM Defendants pursuant to the scheme to deceive and defraud Plaintiff:

| Date | Time | Ticker | Last | Bid | Ask | Source |
|---|---|---|---|---|---|---|
| 12/07/2021 | 11:30 A | RIDE | 4.36 | 4.35 | 4.36 | Phone |
| | | AHT | 10.76 | 10.75 | 10.76 | Phone |
| 12/08/2021 | 12:10 P | RIDE | 4.48 | 4.48 | 4.49 | Phone |
| | | MPLN | 4.49 | 4.48 | 4.49 | Phone |
| | 3:25 P | RIDE | 4.48 | 4.47 | 4.48 | Phone |
| | | RIDE | 4.48 | 4.47 | 4.48 | Phone |
| 12/09/2021 | 1:19 P | RIDE | 4.33 | 4.32 | 4.33 | Phone |
| | | AHT | 10.52 | 10.52 | 10.53 | Phone |
| | 3:14 P | RIDE | 4.19 | 4.19 | 4.20 | Phone |
| | | AHT | 10.50 | 10.49 | 10.50 | Phone |
| | 3:17 P | RIDE | 4.22 | 4.21 | 4.22 | Phone |
| | | AHT | 10.52 | 10.51 | 10.52 | Phone |
| | | MPLN | 4.12 | 4.11 | 4.12 | Phone |
| 12/13/2021 | 10:26 A | RIDE | 4.21 | 4.20 | 4.21 | Video |
| | | AHT | 9.61 | 9.60 | 9.61 | Video |
| | | MPLN | 4.11 | 4.10 | 4.11 | Video |
| 12/14/2021 | 11:33 A | RIDE | 4.09 | 4.08 | 4.09 | Phone |
| | | AHT | 10.08 | 10.08 | 10.09 | Phone |
| | | MPLN | 4.38 | 4.38 | 4.09 | Phone |
| 12/16/2021 | 11:35 A | RIDE | 4.12 | 4.11 | 4.12 | Phone |
| | | AHT | 10.11 | 10.11 | 10.12 | Phone |
| | 12:32 P | RIDE | 4.04 | 4.03 | 4.04 | Phone |
| | | AHT | 10.04 | 10.03 | 10.04 | Phone |
| | 2:26 P | RIDE | 3.96 | 3.96 | 3.97 | Phone |
| | | AHT | 9.77 | 9.75 | 9.77 | Phone |
| 12/17/2021 | 3:02 P | RIDE | 4.13 | 4.12 | 4.13 | Video |
| | | AHT | 10.22 | 10.22 | 10.23 | Video |
| | | MPLN | 4.32 | 4.32 | 4.33 | Video |
| | 3:25 P | RIDE | 4.08 | 4.07 | 4.08 | Video |
| | | AHT | 10.18 | 10.17 | 10.18 | Video |
| | 3.58 P | RIDE | 4.06 | 4.05 | 4.06 | Video |
| | | AHT | 10.15 | 10.15 | 10.16 | Video |
| | | MPLN | 4.16 | 4.15 | 4.17 | Video |
| 12/20/2021 | 11:09 | RIDE | 3.73 | 3.72 | 3.73 | Video |
| | | AHT | 9.74 | 9.72 | 9.73 | Video |
| | 3:46 P | RIDE | 3.69 | 3.69 | 3.70 | Video |
| | | AHT | 10.00 | 9.99 | 10.00 | Video |
| 12/22/2021 | 3.30 P | RIDE | 3.96 | 3.95 | 3.96 | Video |
| | | AHT | 11.96 | 11.95 | 11.96 | Video |

| | 3.51 P | RIDE | 3.98 | 3.97 | 3.98 | Video |
| | | AHT | 11.18 | 11.17 | 11.18 | Video |
| | | MPLN | 4.28 | 4.27 | 4.28 | Video |
| 1/3/2022 | 10:16 A | RIDE | 3.52 | 3.51 | 3.52 | Video |
| | | AHT | 10.51 | 10.51 | 10.52 | Video |
| | 11:43 A | RIDE | 3.68 | 3.67 | 3.68 | Video |
| | | AHT | 10.27 | 10.27 | 10.28 | Video |

## WEBULL RESPONDED TO THE COMPLAINT AFTER  37 DAYS

75. At 1.55 p.m. on January 4, 2022, the Defendant Webull sent Plaintiff an email stating that it did not find evidence of manipulation. Meanwhile, in the period between December 1, 2021 and January 4, 2022, the Defendant Webull sold off over 80 percent of the portfolio securities and caused massive permanent losses to it. In that period, the Defendant Webull received 66 video recordings and screenshots but did not respond. In the same period, the Defendant Webull engaged in generating margin pressures on the portfolio by arbitrarily increasing the margin requirement on RIDE in order to sell it off.  The Defendant Webull did this twice. The Defendant Webull did not provide any data to support its conclusion despite Plaintiff's request, did not reference any of the materials it received from Plaintiff, and did not explain why it took 37 days to reach the conclusion.

76. On January 5, 2022, the Defendant Webull's program errors established $8,146.30 in margin call when the total account value was $73,691.58 and the maintenance margin requirement was $65,653.54. On January 6, 2022, Plaintiff sent the Defendant Webull a snip showing a margin call for $11,349 when the average market value was more than the maintenance margin of $61,003.71. Regardless, the Defendant Webull sold off RIDE shares.

## WEBULL ADMITTED THAT ITS TECHNONOGY CAUSED "ADVERSE CHANGES"

77. At 9.30 a.m. on January 7, 2021, the MM Defendants manipulated the total account values down to $3,000 from $18,000 as the Relevant Securities were trading higher. At 10.07 a.m., Plaintiff sent the Defendant Webull, an email showing the account values being taken down

while the stocks traded higher. Jay Martinez responded that he would "contact our Technology department about the adverse changes to your NAV during the day." The "adverse changes" to the net asset values was a central part of the complaint submitted to the Defendant Webull on November 26, 2021. Jay's response indicated that the Defendant Webull did not investigate the complaint after assuring Plaintiff that it would do so on his behalf.  In the period including December 2021 when the Defendant Webull represented that it would investigate the portfolio value manipulation on behalf of Plaintiff, FINRA found that the Defendant Webull "failed to commit the staff and resources necessary to keep pace with the hundreds of thousands of customer communications it received, which included complaints."[8] In reliance on the Defendant Webull's representation, Plaintiff continued to diligently monitor, record, harvest data and supplied same to the Defendant Webull for the investigation for 37 days, while the Defendant Webull sold away portfolio securities with the knowledge that Plaintiff was waiting for the investigation.

**WEBULL ISSUED BOGUS MARGIN CALLS AND ENGAGED IN SECRETIVE, FRAUDULENT, AND UNAUTHORIZED TRADING OF PORTFOLIO SECURITIES**

78. On January 20, 2022, the Defendant Webull sent Plaintiff an email demanding $24,718.56 in margin calls. On that date, the entire margin debt in the portfolio was less than the requested amount. On, January 21, 2022, the Defendant Webull sent another erroneous demand for $24,826.70. On that date, the portfolio had 19,600 covered RIDE shares. At 2.54.14 p.m., in apparent execution of the bogus demand, the Defendant Webull sold 10,000 covered RIDE shares for a net value of $1.78. At 3.48.15 p.m., the Defendant Webull shorted 160 Jan 19 2024 $4.00 Calls. The unauthorized trades created -$4,284.85 in negative value and added $26,364.26

---

[8] https://www.finra.org/media-center/newsreleases/2023/finra-fines-webull-3-million-options-customer-approval-violations

in margin debt. In order to deceive and defraud Plaintiff, the Defendant Webull did not disclose the unauthorized trades.

79. Following the unauthorized trades by the Defendant Webull, 9,600 RIDE shares and 600 AHT shares remained in the portfolio with a debt balance of $8,718. On January 24, 2022, the Defendant Webull sent Plaintiff a notice for $24,000 in a new bogus margin call. On January 25, 2022, the Defendant Webull doubled down and demanded $42,155.64. The Defendant Webull warned that it would liquidate the portfolio assets to satisfy the bogus demand. On January 26, 2022, the Defendant Webull sent another notice for $35,934.62.

**WEBULL LIQUIDATED THE PORTFOLIO AND CONVERTED THE ASSETS**

80. On January 27, Plaintiff checked the account balance at 8.47 a.m. It had 9,600 RIDE shares, 600 AHT shares, and a debt balance of $8,718 only. At exactly 12 noon, the Defendant Webull's associate director, Jay Martinez, called Plaintiff and said that he wanted to apologize for what happened earlier in the morning. Jay stated that the Defendant Webull sold off the entire 9,600 RIDE covered shares when the market opened. According to Jay, the Defendant Webull was unable to find the representative that liquidated the position as "no individual in Webull accepted making the sale." Jay stated that the Defendant Webull's technology likely made the sale and that the Defendant Webull technology teams were still trying to figure out what exactly happened to the account. Jay stated that the Defendant Webull was going to reverse or buy back the shares and options. Further, the Defendant Webull would return all interest paid in the account for the preceding two months. Jay was to call Plaintiff back in the evening to report the reversal. Plaintiff logged into the account and saw over $8,000 of positive cash. However, the Defendant Webull's platform still displayed a margin call for $6,800. Plaintiff's anguish and distress intensified as he reflected on Jay's statement that the Defendant Webull's technology likely sold off the portfolio. This was at the core of Plaintiff's complaint as the Defendant

Webull adversely calculated the account values and issued margin calls as the MM Defendants manipulated it.

81. Jay called Plaintiff again at 6.50 p.m. to report the reversal and asked him to verify the next day. Jay also told Plaintiff to take his time in meeting the margin call that would remain on the account. On January 28, 2022, Plaintiff checked the account and noticed that the 9,600 covered stock was returned, but the Defendant Webull raised the debt to $10,400 versus the $8,718 margin debt prior to the unauthorized sell-off.  The Defendant Webull also increased the margin call to $9,262 from $6,838.62 which was contained in a margin notice issued on January 27, 2022.

82. The Defendant Webull's unauthorized sales of January 21 and 27, 2022, the bogus margin call notices, the inflation of the margin debt following the unauthorized liquidation and the failure to restore the portfolio to its position prior to the unauthorized sales, convinced Plaintiff not only about Webull's technology and program errors in calculating the account values, but possible Webull's complicity in the manipulative scheme by the MM Defendants against the portfolio. From December 3, 2021, through January 27, 2022, the Defendant Webull sold off 58,000 RIDE covered stocks, and 13,500 AHT covered stocks in reliance on the bogus, inaccurate, erroneous, and manipulated portfolio values. Within the same period, the assets dropped from $270,000 to $15,000. On January 31, 2022, Plaintiff demanded a forensic audit and asked the Defendant Webull to return the account to the position it would have been had its technology not interfered with the values from December 3, 2021.

**WEBULL RETALIATED AGAINST PLAINTIFF FOR DEMANDING FORENSIC ACCOUNT AUDIT AND BREACHED ITS COMMITMENT OF JANUARY 27, 2022**

83. The Defendant Webull retaliated on February 2, 2022, and sold the shares that it just bought back on January 27, 2022. In doing so, the Defendant Webull also broke the

commitment Jay made to Plaintiff on the evening phone call on January 27, 2022, to take his time in meeting the remaining margin demand. The Defendant Webull sold off 3,100 RIDE covered stocks and another 1,000 on February 3, 2022 for $8,400. The Defendant Webull manipulated the margin balance to $1,810.78, reflecting an increase of $1,492. Meanwhile, its technology continued to erroneously assess and display "RM CALL" for $2,597.49.

84. On February 8, 2022, Jay responded to the request for a forensic audit and asked for 24-48 hours to respond properly. Seven weeks later, the Defendant Webull did not respond. On March 29, 2022, Plaintiff wrote the Defendant Webull demanding all documents relating to the account, including agreements. On March 29, 2022, the Defendant Webull responded that there were no arbitration agreements related to the resolution of the account issues.  The Defendant Webull continued to issue the margin calls while retaining portfolio assets. On May 24, 2023, following Lordstown Motors' reverse stock split, the Defendant Webull demanded $13,744.50 in margin maintenance call. On June 15, 2023, it demanded $148.48. There were no margin debts on the account.

**MM DEFENDANTS CONTINUED THE SCHEME THROUGHOUT 2022**

85. Following the destruction of the Defendant Webull portfolio assets, Plaintiff struggled to survive and did not have money to pay basic bills. He suffered severe emotional distress, withdrew from friends or social contacts, and contemplated suicide multiple times. After a period, Plaintiff decided to seek help after thinking about the uncertain future of his little kids in the event of his demise. Plaintiff discussed the matter with a few friends, borrowed money to pay bills, and got counseling from a friend that runs a mental health facility in the District.

86.  After working and saving some money by April 2022, Plaintiff reactivated his TD Ameritrade and Charles Schwab accounts. The MM Defendants monitored the transition through their access to Plaintiff's Personal Devices and resumed the scheme.  Plaintiff recorded multiple

videos showing the same pattern of gamification and paralleling of the prices of the Relevant Securities as described in Paragraphs 52 and 74 occurring any time Plaintiff used the Watchlist through September 13, 2022.  Fearing that the MM Defendants used the Watchlist to monitor him, Plaintiff stopped using the application.

87. Throughout 2022, as Plaintiff transferred the unused portion of his weekly paychecks and bought the Relevant Securities. The MM Defendants monitored the transactions through their access to Plaintiff's Personal Devices and altered the scheme to focus on manipulating the Relevant Securities in the broader market because Plaintiff did not use any more margin debts. Because RIDE was the largest position, they focused on it. Analysts working for MM Defendants became bearish and issued sell recommendations. Plaintiff believed that the MM Defendants sponsored and orchestrate bad press on the stocks irrespective of any positive developments and sold them down to defraud Plaintiff. By the end of 2022, the manipulative scheme created over three hundred thousand dollars ($300,000) in losses in addition to the losses of 2021.

**PLAINTIFF DISCOVERS THAT MM DEFENDANTS HAD ACCESS TO HIS COMPUTERS, NETWORK, MOBILE PHONES, COMMUNICATIONS**

88. In December 2022, Plaintiff started using Yahoo Finance browsers to track his portfolio. On December 13, 2022, Plaintiff opened two browsers to monitor RIDE and MPLN, respectively. At 10.13 a.m., Plaintiff noticed that RIDE was trading at $1.42 just as MPLN was also trading at $1.62. Alarmed at the possibility of the gamification on his desktop, Plaintiff started recording the browsers. At 10.14 a.m., the MM Defendants moved RIDE to $1.4250 and MPLN to $1.6250. Plaintiff decided to place the browsers side-by-side to focus the recording. MPLN dropped to $1.61. Suddenly, the MM Defendants slowly started bringing down RIDE from $1.42. At 10.18 a.m., they brought RIDE to $1.41 to align with MPLN at $1.61. At 1.57

p.m., they had dropped RIDE to $1.33. Plaintiff checked AHT. The price was $5.83. That was

the day that Plaintiff realized that the MM Defendants had access to his Personal Devices.

89.  The MM Defendants continued the scheme into 2023. For example, at 3.19 p.m. on

January 24, 2023, Plaintiff recorded a video which he later posted on YouTube[9] showing MM

Defendants paralleling RIDE and MPLN prices at $1.23. From 3.24 p.m. to 3.30 p.m., they

paired and locked both stocks at $1.2250. Multiple videos recorded from 12.19 p.m. to 1.45 p.m.

on February 2, 2023, showed RIDE and MPLN being traded in lockstep from $1.4350 to $1.48,

as Plaintiff monitored on his desktop. Further, videos[10] recorded on February 27, 2023, and

March 3, 2023 showed RIDE and MPLN prices locked at $1.0850 at 10.30 a.m. and $1.1250 at

3.48 p.m. respectively. The total volume of shares traded on March 3, 2023, were identical at

three million. On April 12, 2023, Goldman Sachs published a recommendation to sell RIDE.

90. On January 24,2023, Plaintiff bought GNS shares for the first time at about $5. The MM

Defendants immediately sold GNS down to $3.40. Plaintiff bought more and it turned upwards.

On March 3, 2023, on the date of the manipulative scheme described above, the MM

Defendants sold GNS down to $2.05. After Plaintiff bought it at 9.44 a.m., GNS ran upwards. Plaintiff

posted a Tweet about the transaction which received a "Like" by the CEO of Genuis Group,

Roger Hamilton.

91. Plaintiff sold call options against all positions. On February 24, 2023, the MM

Defendants started manipulating the call options in order to discount the account value, make the

portfolio inoperable, and inflict severe pain and distress. As RIDE was trading down at $1.02,

the MM Defendants manipulated the price of an option to buy the stock at $3 upwards to $0.95,

---

[9] https://www.youtube.com/watch?v=ilhIE7L8DD0
[10] https://www.youtube.com/watch?v=zrMe7TEVFGU

imposing $11,796.40 on the Schwab portfolio. Plaintiff posted a clip of the manipulation on Tweeter.

92. The MM Defendants adopted the pattern of manipulation for the Schwab portfolio through October 2023. For example, on May 5, 2023, as RIDE was trading under $0.60, the MM Defendants quoted the $3 Call at $1.10, imposing $27,823.57 in losses for the day. After Lordstown Motors filed for bankruptcy protection but the stock started going up, the MM Defendants manipulated the options prices on July 10, 2023, imposing -$1,308,780 or a loss of 2535% on the account. On September 11, 2023, they repeated the manipulation to $1,362,907 while there was $5,779 of positive cash in the account.

93. The MM Defendants continued the same pattern of manipulation on Paragraph 92, prompting Plaintiff to file a complaint with the CBOE on September 21, 2023. Plaintiff believed that the MM Defendants read the email to the CBOE through their access to Plaintiff's Personal Devices. The next day on September 22, they reacted and manipulated the account into $1,354,504 in negative losses. The objective of the MM Defendants was to tie up the account. After Plaintiff started using another account at Ally Financial, the manipulation in the millions of dollars stopped.

94. In May 2023, Plaintiff created Google Finance charts ("Chart") on his desktop to monitor the Relevant Securities. Because only RIDE, AHT, MPLN remained in the portfolio, Plaintiff added AT&T and, later, Tesla, Inc. in order to get a refresh rate. The MM Defendants accessed the Chart on the desktop and started manipulating all five stocks in tandem in the mistaken belief that Plaintiff owned them. For example, at 10.19 a.m. on May 5, 2023, they gamified: GNS $0.83, RIDE $3.53, MPLN $1.33. Again, at 11.08 a.m. on July 14, 2023, they manipulated the numbers: T $28.93, GNS $0.69, RIDE $2.39, MPLN $1.99 and TSLA $278.23.

95. In June 2023, Plaintiff acquired 140 AHT Call Options at $2.50. At the time, AHT was

trading at $3.80. The MM Defendants tracked the transaction and started selling AHT, GNS, and

RIDE in tandem. At the close of the market on October 27, 2023, they sold AHT down to $1.92,

the lowest ever on the stock in furtherance of the scheme.

96. During the Relevant Period, the MM Defendants remotely controlled Plaintiff's

computers and interfered with their operation. Plaintiff reset his Personal Devices multiple times

and bought new ones, subscribed to multiple antivirus providers, and operated multiple home

network providers to avoid the MM Defendants. They would reestablish access. The MM

Defendants accessed Plaintiff's communications regarding this complaint, remotely interfered

with his computers as he researched the violations, sold down the Relevant Securities in

response, and intensified the lockstep manipulation. Plaintiff recorded multiple videos from

October 23 through November 1, 2023, showing intensive lockstep manipulation of GNS, AHT,

and RIDE, pursuant to the scheme.

## CLAIMS FOR RELIEF AGAINST THE MM DEFENDANTS
**Count One: Violation of Section 10(b) of the Exchange Act and Rule 10-b-5(a) & (c)**

97. Plaintiff incorporates by reference Paragraphs 1 to 96 as if fully set forth herein.

98. During the Relevant Period, MM Defendants engaged in and employed devices, schemes,

illegal acts, practices, and a course of business conduct that were intended to manipulate the

market prices of securities held in Plaintiff's portfolio, which operated as a fraud and deceit upon

him. Based on Paragraphs 1 to 96, the MM Defendants acted with scienter.

99. As a direct and proximate result of MM Defendants wrongful conduct, Plaintiff suffered

damages in that he and/or his brokers were forced to sell securities at manipulated prices, he was

unable to sell securities due to manipulated portfolio values, in reliance on an assumption of an

efficient market free of manipulation. Plaintiff and/or his brokers would not have sold the shares

at the prices sold if they had been aware of the MM Defendants' manipulative conduct which artificially affected the prices of the Relevant Securities.

**Count Two: Violation of Section a(2) and a(4) of the Computer Fraud and Abuse Act**

100.	Plaintiff incorporates by reference Paragraphs 1 to 99 as if fully set forth herein.

101.	During the Relevant Period, the MM Defendants intentionally, knowingly, and with intent to defraud, accessed without authorization, computers, mobile phones, tablets, and Internet networks belonging to Plaintiff which he used for private, commercial, and work-related activities within and outside the United States, obtained details of his bank and brokerage account records, and used the records to target and manipulate securities held in hiss brokerage accounts, thereby obtaining hundreds of thousands of dollars in value. The MM Defendants could not have performed the pattern of trades recorded by Plaintiff during the Relevant Period without access to Plaintiff's Personal Devices.

**Count Three: Conspiracy to Restrain Trade in Violation of Section 1 of the Sherman Act**

102.	Plaintiff incorporates by reference Paragraphs 1 to 101 as if fully set forth herein.

103.	The MM Defendants conspired and entered into an anticompetitive scheme to hack into Plaintiff's computers, mobile devices and network, obtain his bank records and records of brokerage firms, and fix, raise, stabilize, maintain or suppress the prices of the Relevant Securities, and in order to restrain trade.

104.	Rather than engage in competition or the ordinary activities of market making, the MM Defendants conspired and agreed with one another to stalk Plaintiff and all his activities and communications, obtain the exact details of his securities portfolio, manipulate the values, short, gamify and artificially lower the prices of the Relevant Stocks, in order to deceive and defraud him, and punish him for his online views.

105.	As a direct and intended result of the MM Defendants' conspiracy, they caused

injury to Plaintiff by hacking into his computers and network, obtaining his financial records and using same to manipulate his portfolio, short and gamify the securities, and caused him over one million dollars ($1,000,000) in damages.

**Count Four: Intentional Infliction of Emotional Distress Under Maryland State Law**

106.         Plaintiff incorporates by reference Paragraphs 1 to 105 as if fully set forth herein.

107.         During the Relevant Period, the MM Defendants intentionally and willfully conspired to inflict severe emotional distress and pain on Plaintiff through the scheme.

108.         The MM Defendants hacked Plaintiff's Personal Devices, stalked and monitored all his activities, remotely interfered with his use of the devices, obtained his financial records, deceived him into depositing all his life savings in reliance on the assumption of an efficient market free of manipulation, and defrauded him.

109.         Plaintiff suffered severe emotional distress, withdrew from friends, family and social contacts, failed to meet financial obligations, contemplated suicide several times, suffered mental health breakdown, and had counseling. Plaintiff's emotional distress was directly caused by the conspiracy and manipulative scheme of the MM Defendants and Defendant Webull.

### CLAIMS FOR RELIEF AGAINST WEBULL FINANCIAL, LLC
**Count One: Violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) & (c)**

110.         Plaintiff incorporates by reference Paragraphs 1 to 109 as if fully set forth herein.

111.         The Defendant Webull willfully and intentionally made multiple untrue statements of material facts and omitted to state facts necessary to make its statements not misleading to Plaintiff.  The Defendant Webull repeatedly provided false and inaccurate portfolio values, deceived Plaintiff by committing to investigate his complaint when it knew that it would not provide the resources for the investigation. Further, the Defendant Webull provided false and misleading initial information about the portfolio values, provided false margin notices

and sold off portfolio assets based on the false data. The Defendant Webull continued to provide false and misleading information to Plaintiff regarding restoration of the assets.

112.     The Defendant Webull engaged in and employed devices, schemes, illegal acts, practices, and a course of business that were intended to operate as a fraud and deceit upon Plaintiff. After deceiving Plaintiff about the investigation of his complaint, the Defendant Webull provided him a false observation and made him to wait and rely on the Defendant Webull to investigate the manipulative scheme of the MM Defendants.  The Defendant Webull devised and engaged in a course of business to sell off the portfolio and convert the assets through a combination of illegal and fraudulent acts. Based on paragraphs 1 to 96, the Defendant Webull acted with scienter.

**Count Two: Webull Breached its Fiduciary Duty under Maryland Law**

113.     Plaintiff incorporates by reference Paragraphs 1 to 112 as if fully set forth herein.

114.     The Defendant Webull breached its obligation to monitor, detect, and prevent manipulative or fraudulent trading practices. Further, the Defendant Webull breached its fiduciary duty to act in Plaintiff's best interest. The Defendant Webull was required to act honestly and straightforwardly with Plaintiff but failed. The Defendant Webull deceived Plaintiff into believing that it would investigate his complaint, provided false and misleading information and statements, engaged in self-dealing and sold off portfolio assets while knowing that Plaintiff was waiting and relying on its investigation, secretly traded in and sold off portfolio assets without authorization, failed to disclose the secret dealings, and appropriated portfolio assets.

**Count Three: Webull Breached its Brokerage Contract under Maryland Law**

115.     Plaintiff incorporates by reference Paragraphs 1 to 96 as if fully set forth herein.

116.     The Defendant Webull failed to perform according to the terms of its brokerage

contract, acted and embarked on a course of business showing that it had no intention to perform accordingly, and prevented Plaintiff from fulfilling his contractual obligations. The Defendant Webull provided inaccurate statements and sold off Plaintiff's assets based on those, breached its margin account obligations, and appropriated portfolio assets without authority.

**Count Four: Fraud under Maryland Law**

117.     Plaintiff incorporates by reference Paragraphs 1 to 96 as if fully set forth herein.

118.     During the Relevant Period, the Defendant Webull made multiple false statements and representations to Plaintiff which it knew and/or ought to have know to be false.  Defendant Webull made the false statements in order to deceive and defraud Plaintiff. Plaintiff reasonably relied on the Defendant Webull's representations in the belief that the Defendant Webull was a licensed broker-dealer. For 33 days, Plaintiff dutifully provided the Defendant Webull with data pursuant to the false representations, meanwhile Webull engaged in self-dealing and sold off the assets. But for the Defendant Webull's false statements, Plaintiff would have taken measures to derisk the account.

**Count Five: Intentional Misrepresentation under Maryland Law**

119.     Plaintiff incorporates by reference Paragraphs 1 to 118 as if fully set forth herein.

**Count Five: Intentional Infliction of Emotional Distress under Maryland Law**

120.     Plaintiff incorporates by reference Paragraphs 1 to 119 as if fully set forth herein.

121.     Defendant Webull intentionally and willfully caused severe emotional distress to Plaintiff through its alleged unlawful acts. Defendant Webull deceived Plaintiff into believing that it would investigate his complaint, asked him to submit ongoing data, while engaging in self-dealing and selling away his assets. Defendant Webull repeatedly provided false portfolio values, ignored every warning from Plaintiff regarding the deficiency of its technology, sold off the entire portfolio, appropriated the assets, and repeatedly gave false promises, thereby causing severe emotional distress to Plaintiff.

## PRAYER FOR RELIEF

Wherefore Plaintiff respectfully requests that this Court enter judgment:

A.  Finding that the MM Defendants violated federal securities laws, the Computer Fraud and Abuse Act, the Sherman Antitrust Act, and Maryland State Law, as alleged herein;

B.  Finding that Defendant Webull violated federal securities and Maryland State Laws, as alleged;

C.  Ordering MM Defendants to pay damages as a result of their unlawful conducts, including actual damages of $1,000,000 or the amount to be determined at the trial; treble and punitive damages in an amount to be determined at trial;

D.  Ordering the Webull to pay damages as a result of its unlawful conducts including the actual damages of $1,000,000 or the amount to be determined at the trial; treble and punitive damages in an amount to be determined at trial;

E.  Ordering permanent injunctive relief against MM Defendants from further violations;

F.  Awarding reasonable attorney's fees and costs together with all judgment interests;

G.  Granting such other and further relief as the Court deems just and appropriate.

I, Judekenneth Maduka Orji, affirm under the penalty of perjury that the foregoing is true to the best of my personal knowledge and belief.

Dated November 1, 2023

_/s/Judekenneth Maduka Orji/s/*_
Judekenneth Maduka Orji

*The undersigned Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action

Respectfully submitted,

OAU LAW GROUP, LLC
/s/ G. Emeka Onwezi

_____

By:    G. Emeka Onwezi, Fed. Bar No.: 16008
P. O. Box 619
Bowie, Maryland 20718
(301) 281-0030
(240) 281-0030 (Facsimile)
eonwezi@oaulaw.com
Counsel for the Plaintiff

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands jury trial.

/s/ G. Emeka Onwezi

_____

G Emeka Onwezi