# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| JUDEKENNETH MADUKA ORJI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 8:23-cv-02986-LKG |
| | ) |
| | ) March 19, 2025 |
| CITADEL SECURITIES, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

## I.    INTRODUCTION

In this civil action, the Plaintiff, Judekenneth Maduka Orji, alleges that the Defendants, Citadel Securities, LLC; Goldman Sachs & Co., LLC; GTS Securities, LLC; VIRTU Americas LLC; Canaccord Genuity, Inc.; Susquehanna Securities, Inc.; Cowen & Company, LLC; Robert W. Baird & Co., Inc.; IMC Chicago, LLC; Latour Trading, LLC; G1 Execution Services, LLC; Cantor Fitzgerald & Co.; Two Sigma Securities, LLC; SG Americas Securities, LLC; Morgan Stanley & Co., LLC; J. P. Morgan Securities, LLC; Clear Street, LLC; Stifel, Nicolaus & Co., Inc.; Wells Fargo Securities, LLC; William Blair, LLC a/k/a William Blair & Co., LLC; UBS Securities, LLC; Keefe, Bruyette & Woods, Inc.; BOFA Securities, Inc.; Maxim Group, LLC; Keybanc Capital Markets, Inc.; StoneX Financial Inc.; PUMA Capital, LLC; HRT Financial, LP; Flow Traders US Institutional Trading, LLC; and Wolverine Trading, LLC (collectively, the "MM Defendants"), engaged in a conspiracy to deceive and defraud him, by fixing, paralleling and manipulating the quotations and prices of certain securities, during the period September 1, 2021, to the present, in violation of the Exchange Act §10(b), 15 U.S.C. § 78j(b); Rule 10-b-5(a) and (c); 17 C.F.R. §§ 240.10b-5(a) and (c); the Sherman Antitrust Act (the "Sherman Act"), 15 U.S.C. § 1; the Computer Fraud and Abuse Act (the "CFAA"); 18 U.S.C. § 1030; and Maryland law.  ECF No. 130.  The Plaintiff also alleges that Defendant Webull Financial, Inc., ("Defendant Webull"), breached a brokerage contract and violated its obligations as a broker-dealer, by, among other things, negligently providing brokerage services and failing to follow Financial Industry Regulatory Authority, Inc. ("FINRA") industry guidelines, after becoming

aware that the Plaintiff's brokerage account was compromised, in violation of the Exchange Act § 10(b); Rule 10b-5(b) & (c); 17 C.F.R. §§ 240.10b-5(b) and (c); the Restatement (Second) of Torts § 552; and Maryland law. *Id.*

The MM Defendants have moved to dismiss the second amended complaint, pursuant to Fed. R. Civ. P. 8, 9(b) and 12(b)(6). ECF No. 134. Defendant Webull has also moved to dismiss the second amended complaint, pursuant to Fed. R. Civ. P. 8, 9(b), 12(b)(2) and (b)(6). ECF No. 135. These motions are fully briefed. ECF Nos. 134, 134-1, 135, 146, 147, 148 and 149. No hearing is necessary to resolve the motions. *See* L.R. 105.6 (D. Md. 2023). For the reasons that follow, the Court: (1) **GRANTS-in-PART** the MM Defendants' motion to dismiss; (2) **GRANTS-in-PART** and **DENIES-in-PART** Defendant Webull's motion to dismiss; (3) **DISMISSES** the second amended complaint as to the MM Defendants **WITH PREJUDICE**; and (4) **DISMISSES** the Plaintiff's Exchange Act claim and claims for intentional infliction of emotional distress, breach of fiduciary duty, breach of contract, intentional misrepresentation, professional negligence and a Section 552 violation as to Defendant Webull **WITH PREJUDICE**.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A. Factual Background

In this civil action, the Plaintiff alleges that the MM Defendants engaged in a conspiracy to deceive and defraud him by fixing, paralleling and manipulating the quotations and prices of certain securities, during the period September 1, 2021, to the present, in violation of the Exchange Act; Rule 10-b-5(a) and (c); 17 C.F.R. §§ 240.10b-5(a) and (c); the Sherman Act; the CFAA; and Maryland common law. ECF No. 130. The Plaintiff also alleges that Defendant Webull breached a brokerage contract and violated its obligations as a broker-dealer, by, among other things, negligently providing brokerage services and failing to follow FINRA industry guidelines, after becoming aware that the Plaintiff's brokerage account was compromised, in violation of the Exchange Act; Rule 10b-5(b) and (c); 17 C.F.R. §§ 240.10b-5(b) and (c); the Restatement (Second) of Torts § 552; and Maryland law. *Id.*

---

[1] The facts recited in this memorandum opinion are taken from the second amended complaint; the Defendants' respective motions to dismiss and the memoranda in support thereof; and the Plaintiff's responses in opposition thereto. ECF Nos. 130, 134, 134-1, 135, 146 and 147.

Specifically, in the second amended complaint, the Plaintiff alleges the following claims against the MM Defendants:  (1) violation of Section 10(b) of the Exchange Act and Rule 10-b-5 (Count I); (2) violation of Section a(2) and a(4) of the CFAA (Count II); (3) conspiracy to restrain trade in violation of Section 1 of the Sherman Act (Count III); (4) intentional infliction of emotional distress (Count IV); and (5) violation of right to privacy (Count V).  *Id*. at ¶¶ 98-113.  The Plaintiff also alleges the following claims against Defendant Webull in the second amended complaint:  (1) violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) and (c) (Count I); (2) breach of fiduciary duty (Count II); (3) breach of contract (Count III); (4) common law fraud (Count IV); (5) intentional misrepresentation (Count V); (6) intentional infliction of emotional distress (Count VI); (7) professional negligence (Count VII); and (8) violation of Restatement (Second) of Torts Section 552 (Count VIII).  *Id.* at ¶¶ 114-33.  As relief, the Plaintiff seeks, among other things, certain injunctive relief and to recover monetary damages and punitive damages from the Defendants.  *Id.* at Prayer for Relief.

<u>The Parties</u>

The Plaintiff is a resident of Prince George's County, Maryland.  *Id*. at ¶ 10.

The MM Defendants are market makers or market participants of the New York Stock Exchange, the Chicago Board Options Exchange, the Nasdaq Stock Exchange and other stock exchanges.  *Id*. at ¶ 1.

Defendant Webull is a broker-dealer that is incorporated in Delaware and maintains its principal place of business in New York.  *Id.* at ¶ 11.

<u>The Plaintiff's Brokerage Account With Webull</u>

As background, the Plaintiff, Judekenneth Maduka Orji, is a licensed attorney and investor who holds accounts at TD Ameritrade and TradeStation.  *Id.* at ¶¶ 42-44.  The Plaintiff is also an active participant in online Internet finance forums.  *Id*. at ¶ 42.

In November 2020, the Plaintiff became a customer of Webull.  *Id*. at ¶ 11.  Defendant Webull represents that, to sign up an account with Webull, an individual must review and agreed to the terms of three Webull agreements:  (1) the "Customer Account Agreement;" (2) the "Webull Margin Agreement;" and (3) the "Webull Financial Options Agreement" (collectively "the Agreements").  ECF Nos. 135-2, 135-3 and 135-4.  Defendant Webull also represents that Apex Clearing Corporation ("Apex"), Defendant Webull's clearing broker, is a party to these agreements.  *Id*.; *see also* ECF No. 135-1 (Edelman Declaration); ECF No. 135-2 at §§ 6 and 6A.

The Plaintiff maintains that he did not enter into these agreements in connection with his Webull account. ECF No. 147 at 5.

Section three of the Customer Account Agreement addresses "breach" and provides that:

> [Apex may] [s]ell any or all securities and other property held in any of [Plaintiff's] accounts (either individually or jointly with others), cancel or complete any open orders for the purchase or sale of any securities and other property, and/or borrow or buy-in any securities and other property required to make delivery against any sale, including a short sale, effected for [Plaintiff], all without notice or demand for deposit of collateral, other notice of sale or purchase, or other notice or advertisement, each of which [wa]s expressly waived by [Plaintiff] . . .

ECF No. 135-2 at § 3. This provision also provides that Apex reserves the right to refuse to execute any transactions on Plaintiff's behalf "at any time and for any reason." *Id.* Lastly, the Webull Financial Options Agreement contains the following provision regarding the Plaintiff's release:

> I will not hold [Webull and Apex] responsible for the availability, accuracy, timeliness, completeness, or security of trading securities through [Webull's and Apex's] platform. I therefore agree that [Webull and Apex] are not responsible for any losses I incur (meaning claims, damages, actions, demands, investment losses, or other losses, as well as any costs, charges, attorneys' fees, or other fees and expenses) in relation to this functionality. Furthermore, I shall be responsible for all expenses incurred by you, including reasonable attorneys' fees in enforcing any provision of or collecting any amounts due you under this agreement.

ECF No. 135-4 at § 21.

The Alleged Market Manipulation Scheme

In the second amended complaint, the Plaintiff alleges that his participation on certain online Internet finance forums captured the attention of the MM Defendants and led to a conspiracy and scheme to defraud him. *See generally* ECF No. 130. Specifically, the Plaintiff alleges that, once the MM Defendants began following his online activity, they "conspired to target and manipulate his portfolio in order to punish him for his views, deceive and defraud him." *Id.* at ¶¶ 2, 4 and 42.

In this regard, the Plaintiff alleges that the MM Defendants' scheme involved a conspiracy to identify him, by "stalking" his transactions. *Id.* at ¶¶ 1, 2 and 43. The Plaintiff alleges that he first observed this "stalking" sometime before September 1, 2021. *Id.* at ¶ 1.

The Plaintiff also alleges that he "received email and text messages purporting to be from Google, Inc.," that were used to reset his Gmail account's password, on or about September 7, 2021.  *Id.* at ¶ 45.  The Plaintiff further alleges that the effort to reset his password was undertaken by the MM Defendants, to "obtain financial records and specific details of his brokerage accounts, use the data to fix quotations, gamify prices, trade in lockstep, and manipulate the Relevant Securities . . . to create losses and defraud him."  *Id.* at ¶ 43; *see also id.* at ¶¶ 2, 45, 47-58, 74, 86-87 and 96.

In this regard, the Plaintiff alleges that he downloaded the Webull desktop app and began using the app to monitor his portfolio on September 15, 2021.  *Id.* at ¶ 49.  The Plaintiff also alleges that he observed that the total account value of his Webull portfolio "was sold down to $51,315.19, with $-115,668.87 in losses," within one second.  *Id.*  The Plaintiff attributes the fluctuation in his portfolio to the MM Defendants and he contends that "[t]he MM Defendants would continue to use their privileges as market makers to artificially set the Bid/Ask price quotation of the Relevant Options Symbols/Cusips to control and systematically erode [his] Webull portfolio balance."  *Id.*

The Plaintiff also contends that the MM Defendants executed this scheme by, sending phishing emails with malware and spyware programs that allowed them access to his home network and electronic devices and that the MM Defendants used this information to engage in manipulative trades and quotations to create losses.  *Id.* at ¶ 2.  Lastly, the Plaintiff alleges that Defendant Webull participated in the market manipulation scheme, by, among other things, arbitrarily miscalculating his account values and operating "faulty technology that was unable to properly calculate the account values."  *Id.* at ¶¶ 59-60.

<u>Webull's Investigation Of The Alleged Scheme</u>

In October 2021 and on November 11, 2021, the Plaintiff contacted Webull to complain about the MM Defendants' alleged market manipulations and that his portfolio values were not being updated by Webull.  *Id.* ¶¶ 54, 59-60.  The Plaintiff maintained that "Webull's [t]echnology wrongfully sold off [his] assets."  *Id.* at ¶ 60.  On December 1, 2021, a Webull options account supervisor contacted the Plaintiff and explained that Webull's technology was not responsible for the fluctuations in the Plaintiff's portfolio.  *Id.* at ¶ 64.  And so, Webull ultimately determined that there was no evidence of manipulation.  *Id.* at ¶¶ 64 and 75.

<u>The Plaintiff's Allegations</u>

    In the second amended complaint, the Plaintiff asserts the following five claims against the MM Defendants:  (1) violation of Section 10(b) of the Exchange Act and Rule 10-b-5 (Count I); (2) violation of Section a(2) and a(4) of the CFFA (Count II); (3) conspiracy to restrain trade in violation of Section 1 of the Sherman Act (Count III); (4) intentional infliction of emotional distress (Count IV); and (5) violation of right to privacy (Count V).  *Id*. at ¶¶ 98-113.  With regards to his Exchange Act claim, the Plaintiff alleges that the MM Defendants "engaged in and employed devices, schemes, illegal acts, practices, and a course of business conduct that were intended to manipulate the market prices of securities held in Plaintiff's portfolio, which operated as a fraud and deceit upon him and that the MM Defendants acted with scienter.  *Id*. at ¶¶ 1-99.  The Plaintiff also alleges that, "[a]s a direct and proximate result of [the] MM Defendants' wrongful conduct, [he] suffered damages in that he and/or his brokers were forced to sell securities at manipulated prices, he was unable to sell securities due to manipulated portfolio values, and was deceived into relying on the manipulated prices created by the MM Defendants while assuming an efficient market free of manipulation.  [The] Plaintiff and/or his brokers would not have sold the shares at the prices derived had the MM Defendants not illegally obtained specific details of his portfolio securities and engaged in manipulative conducts which artificially affected their prices."  *Id*. at ¶ 100.

    With regards to his CFAA claims, the Plaintiff alleges that the MM Defendants "intentionally, knowingly, and with intent to defraud, accessed without authorization, [his] computers, mobile phones, tablets, and Internet networks . . . which he used for private, commercial, and work-related activities within and outside the United States, obtained details of his bank and brokerage account records, and used the records to target and manipulate securities held in his brokerage accounts, thereby obtaining hundreds of thousands of dollars in value."  *Id*. at ¶ 102.  With regards to his Sherman Act claims, the Plaintiff similarly alleges that the MM Defendants "conspired and agreed with one another to engage in activities that are criminal under federal and Maryland State laws, that is, to stalk [him], hack his devices and harvest brokerage accounts login details, obtain the exact details of his securities portfolio, manipulate the values, short, gamify and artificially lower the prices of the Relevant Stocks, in order to deceive and defraud him, and punish him for his online views."  *Id*. at ¶ 105.

6

In this regard, the Plaintiff also alleges that "[t]hese potential criminal acts are beyond the regulation of the MM Defendants by the SEC and Securities Laws." *Id*. And so, the Plaintiff contends that the MM Defendants caused him injury, "by destroying his Personal Devices, remotely freezing his computers and stopping his professional work and use of the devices, caused him financial losses in attempt to resolve the fraud, and defrauded him over one million dollars ($1,000,000) in brokerage portfolio damages." *Id*. at ¶ 106.

With regards to his intentional infliction of emotional distress claim, the Plaintiff alleges that the MM Defendants "intentionally and willfully conspired to inflict severe emotional distress and pain on [him] by engaging in unlawful acts that were extreme and outrageous, including potentially criminal conducts, in order to defraud him, deceive, stalk and monitor him to ensure that he succumbed to hardship and emotional distress." *Id*. at ¶ 108. In this regard, the Plaintiff alleges that he "was severely depressed for over one year, afflicted by persistent high blood pressure, could not take care of his obligations," and that he "suffered severe emotional distress and depression, withdrew from friends, family and social contacts, failed to meet financial obligations, contemplated suicide several times, suffered mental health breakdown, persistent high blood pressure, and had counseling," as a direct result of the alleged conspiracy and scheme perpetrated by the MM Defendants. *Id*. at ¶¶ 109-10.

Lastly, the Plaintiff alleges with regards to his invasion of privacy claim that the MM Defendants "willfully and unlawfully intruded into the seclusion of [his] private life, among other things, by accessing his Personal Devices without authorization, demonstrating their access in multiple ways including by gamifying stocks in his private watchlists and monitors, stalking his and family members' use of the devices, monitoring and stalking financial transactions and manipulating his portfolio securities based on knowledge of his financial data, remotely interfering with the use of the Personal Devices in order to frustrate hm, and engaging in multiple intentional actions that inflicted mental anguish and emotional distress on [the] Plaintiff." *Id*. at ¶ 112.

The Plaintiff also asserts the following eight claims against Defendant Webull: (1) violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) and (c) (Count I ); (2) breach of fiduciary duty (Count II); (3) breach of contract (Count III); (4) common law fraud (Count IV); (5) intentional misrepresentation (Count V); (6) intentional infliction of emotional distress (Count VI); (7) professional negligence (Count VII); and (8) violation of Restatement (Second)

of Torts Section 552 (Count VIII). *Id.* at ¶¶ 114-33. With regards to his Exchange Act claim against Defendant Webull the Plaintiff alleges that Defendant Webull participated in the market manipulation scheme by "repeatedly provid[ing] false and inaccurate portfolio values [and] deceived [him] by committing to investigate his complaint when it knew that it would not provide the resources for the investigation." *Id.* at ¶ 115. In addition, the Plaintiff alleges that Defendant Webull "continued to provide false and misleading information to [him] regarding restoration of the assets" and that Defendant Webull also "provided a false observation and devised and engaged in a course of business to sell off the portfolio and convert the assets through a combination of illegal and fraudulent acts. . . and acted with scienter. *Id.* at ¶ 116.

With regards to his breach of fiduciary duty claim against Defendant Webull, the Plaintiff alleges that Defendant Webull owed him a fiduciary duty that it assumed in two instances: "(1) when it accepted to investigate the manipulation of the account on behalf of [the] Plaintiff, and (2) when it turned the account into a discretionary account by exercising discretion and trading it without authorization on January 21 and 27, 2022." *Id.* at ¶ 118. The Plaintiff also alleges that Defendant Webull breached this duty by failing "to act in the best interest of the [P]laintiff and refrain from self-dealing, monitor and ensure the security of the account, provide accurate information, and act honestly and straightforwardly with [the] Plaintiff." *Id.* at ¶ 119.

With regards to his breach of contract claim against Defendant Webull, the Plaintiff alleges that Defendant Webull "failed to perform according to contract and commitment, acted and embarked on a course of business showing that it had no intention to perform, and prevented [the] Plaintiff from fulfilling his contractual obligations." *Id.* at ¶ 121. The Plaintiff also alleges that Defendant Webull committed common law fraud, because: (1) it "made multiple false statements and representations to [the] Plaintiff which it knew and/or ought to have known to be false;" (2) "[t]he false statements were made in order to deceive and defraud [the] Plaintiff;" and (3) he "reasonably relied on [Webull's] representations in the belief that [Webull] was a professional broker-dealer." *Id.* at ¶ 123.

In addition, the Plaintiff alleges, with regards to his intentional infliction of emotional distress claim, that Defendant Webull "intentionally and willfully" caused him "severe emotional distress . . . through engaging in unlawful acts that, among other things, unprofessional, unethical and fraudulent contrivances that caused him to have a mental breakdown and receive counseling." *Id.* at ¶ 126. To support his professional negligence claim against Defendant

8

Webull, the Plaintiff also alleges that Defendant Webull owed him "a duty of professional care as a broker-dealer" and that Defendant Webull breached this duty "by engaging in unprofessional conduct, among other things, by providing and relying on inaccurate account information, inducing and selling away the assets without authorization, breaching commitments, misappropriating assets and refusing to return them when [the] Plaintiff so demanded." *Id*. at ¶ 128. Lastly, with regards to his violation of Restatement (Second) of Torts Section 552 claim against Defendant Webull, the Plaintiff alleges that Defendant Webull "negligently supplied false information which it intended to serve as guidance to [him by], among other things, falsely stating that 'opening rotation' was responsible for daily manipulation of the account values, multiple false account statements, and multiple false margin calls which it relied on in selling away the assets." *Id*. at ¶ 131. And so, the Plaintiff seeks, among things, certain injunctive relief and to recover monetary damages from the Defendants. *Id*. at Prayer for Relief.

### B. Procedural History

The Plaintiff commenced this matter on November 1, 2023, and he amended the complaint on January 8, 2024, and July 19, 2024, respectively. ECF Nos. 1, 87 and 130. On August 23, 2024, Defendant Webull and the MM Defendants filed their respective motions to dismiss, pursuant to Fed. R. Civ. P. 8, 9(b) and 12(b)(6), and memoranda in support thereof. ECF Nos. 134, 134-1 and 135.

On January 3, 2025, the Plaintiff filed responses in opposition to the Defendants' motions. ECF Nos. 146 and 147. On March 8, 2025, the Defendants filed their respective reply briefs. ECF Nos. 148 and 149.

The Defendants' motions to dismiss having been fully briefed, the Court resolves the pending motions.

## III. LEGAL STANDARDS

### A. *Pro Se* Litigants

Plaintiff is proceeding in this matter without the assistance of counsel. And so, the Court must construe the second amended complaint liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980). But, in doing so, the Court cannot disregard a clear failure to allege facts setting forth a cognizable claim. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012); *see also Bell v. Bank of Am., N.A*., No. 13-0478, 2013 WL 6528966, at *1 (D. Md. Dec. 11, 2013) ("Although a pro se plaintiff is general[ly] given more leeway than a party represented by counsel . . . a

district court is not obliged to ferret through a [c]omplaint . . . that is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.") (quotations omitted). And so, if plaintiff fails to allege sufficient facts setting forth a cognizable claim, the Court must dismiss the complaint.

### B. Rule 12(b)(2)

A motion to dismiss for lack of personal jurisdiction brought pursuant to Fed. R. Civ. P. 12(b)(2) "raises an issue for the [C]ourt to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). The burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). To do so, a plaintiff need only make "a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson*, 816 F.3d at 268. When deciding a motion brought pursuant to Fed. R. Civ. P. 12(b)(2), the Court may "rule solely on the basis of motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint." *State v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 437 (D. Md. 2019) (citations omitted). And so, the Court must consider all disputed facts and make reasonable inferences in favor of the plaintiff in determining whether the plaintiff has made the requisite showing that the Court possesses personal jurisdiction over a defendant. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

For the Court to assert personal jurisdiction over a non-Maryland resident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Carefirst of Md.*, 334 F.3d at 396 (citation omitted). In this regard, Maryland courts "have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the Due Process Clause of the Constitution." *Id.* And so, the Court's jurisdiction over a non-Maryland resident comports with due process if the defendant has "minimum contacts" with the forum, such that exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Court may exercise either general jurisdiction—arising from a defendant's contacts with a forum state which are so systematic and continuous as to essentially place the defendant "at home"—or specific jurisdiction—arising from an "affiliation between the forum and the

underlying controversy." *Ark. Nursing Home Acquisitions, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 639 (D. Md. 2020) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 582 U.S. 255, 262-63 (2017)). With regards to general jurisdiction, a corporations' "place of incorporation and principal place of business are 'paradig[m]. . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear v. Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Specific jurisdiction, on the other hand, requires consideration of: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Md.*, 334 F.2d at 397 (citations omitted). In this regard, the Fourth Circuit has recognized that one factor indicating "purposeful availment" is whether the defendant "reached into the forum state to solicit or initiate business." *Ark. Nursing Home Acquisition,* 460 F. Supp. 3d at 639-40 (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (cleaned up)).

### C. Rule 8(a) And 12(b)(6)

Under Fed. R. Civ. P. 8(a), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief. To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet, Inc,.* 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv.*

*Priv. Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

### D.  Rule 9(b) And The PLSRA

Allegations of fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b)'s heightened pleading standard, a plaintiff must allege facts establishing the "who, what, when, where, and how" of the claimed fraud.  *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citations omitted).  Under this heightened standard, a complaint is "inadequate" when it "impermissibly aggregat[es] defendants without specifically alleging which defendant was responsible for which act." *Corder v. Antero Res. Corp.*, 57 F.4th 384, 403 (4th Cir. 2023) (citations omitted).

The Private Securities Litigation Reform Act of 1995 ("PSLRA") also provides stringent pleading requirements for fraud claims arising from alleged violations of federal securities laws, including that a plaintiff must:  (1) identify each specific statement alleged to be false or misleading and explain why it is misleading; (2) state particular facts giving rise to a strong inference that the defendant issued the allegedly misleading statement knowing that it was false at the time it was made; (3) allege that the information in the false or misleading statement, or omission of information, was the cause of the actual loss the plaintiff suffered; and (4) prove loss causation.  15 U.S.C. § 78u-4(b); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 313-14 (2007) (describing the pleading requirements of the PLSRA).  A plaintiff alleging scienter must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  In this regard, a plaintiff must allege "either intentional or severely reckless conduct."  *KBC Asset Mgmt. NV v. DXC Tech. Co*., 19 F.4th 601, 608 (4th Cir. 2021) (affirming dismissal of Section 10(b) claims).  A complaint that fails to meet these heightened standards "shall" be dismissed.  15 U.S.C. § 78u-4(b)(3)(A); *see Cozzarelli v. Inspire Pharm, Inc*. 549 F.3d 618, 628 (4th Cir. 2008).

### E.  The Exchange Act

To state a market manipulation claim under Section 10(b) and Rule 10b-5 of the Exchange Act, a plaintiff must plead facts that show:  "(1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *ATSI Commc's, Inc. v. Shaar Fund, Ltd.*,

493 F.3d 87, 101 (2d Cir. 2007).  In this regard, a plaintiff must allege facts to show that he relied on an efficient market free of manipulation.  *Id*.  The plaintiff must also plead with specificity facts to show "that an alleged manipulator engaged in market activity aimed at deceiving investors as to how other market participants have valued a security."  *Id*. at 100; *see also Burt v. Maasberg*, No. 12-0464-ELH, 2013 WL 1314160, at *15 (D. Md. Mar. 31, 2013); Fed. R. Civ. P. 9(b); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 n.5 (4th Cir. 2011) (stating that Rule 9(b) applies to Section 10(b) elements for which the PSLRA does not impose a higher standard).  And so,  the "test" of a market manipulation claim is whether the complaint sets forth "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue."  *ATSI*, 493 F.3d at 102.

In addition, a plaintiff must allege a "causal connection" between a defendant's allegedly "fraudulent conduct" and the plaintiff's alleged "economic loss."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).  And so, a plaintiff must plead facts to show that the alleged misconduct was a "substantial" proximate cause of the alleged loss.  *Katyle*, 637 F.3d at 472. Lastly, a plaintiff must plead facts to show scienter, which is "a mental state embracing intent to deceive, manipulate, or defraud."  *Yates v. Mun. Mortg. & Eq., LLC*, 744 F.3d 874, 884 (4th Cir. 2014).

### F.  The Sherman Act

Section 1 of the Sherman Antitrust Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce . . ."  15 U.S.C. § 1. "The Supreme Court, however, long ago established that Section 1 only outlaws restraints that are 'unreasonably restrictive of competitive conditions.'"  *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 508 (4th Cir. 2002) (citing *Standard Oil Co. v. United States*, 221 U.S. 1, 59 (1911)).  To establish a Section 1 antitrust violation, "a plaintiff must prove and therefore plead: (1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint of trade." *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 423-24 (4th Cir. 2015) (quoting *N.C. State Bd. of Dental Exam'rs v. FTC*, 717 F.3d 359, 371 (4th Cir. 2013)); *see also Loren Data Corp. v. GXS, Inc.*, 501 F. App'x 275, 279 (4th Cir. 2012).  In this regard, Section 1 applies only to concerted action that restrains trade.  *See Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 190 (2010).  And so, "the crucial question is whether the challenged anticompetitive

conduct stems from independent decision or from an agreement, tacit or express." *Twombly*, 550 U.S. at 553 (quoting *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (1954)) (internal quotations omitted).

The Fourth Circuit has adopted three analytical frameworks for determining whether a Sherman Antitrust Act violation occurred: (1) the *per se* analysis, with respect to obviously anticompetitive restraints; (2) the quick-look analysis, for those combinations with procompetitive justification; and (3) the full rule of reason analysis, for restraints whose net impact on competition is particularly difficult to determine. *Cont'l Airlines*, 277 F.3d at 508-09. Relevant to the pending motions, a plaintiff can rely upon either "direct or circumstantial evidence that reasonably tends to prove that the [alleged conspirators] had a conscious commitment to a common scheme designed to achieve an unlawful objective." *In re Titanium Dioxide Antitrust Litigation*, 959 F. Supp. 2d 799, 820 (D. Md. 2013). Direct evidence is "explicit and requires no inferences to establish the proposition or conclusion being asserted." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 226 (citation omitted). A showing based upon circumstantial evidence requires that a plaintiff show both parallel conduct by defendants and "plus factors" that "suggest[] that the parallel conduct resulted from concerted action." *Jien v. Purdue Farms, Inc.*, 2020 WL 5544183, at *7 (D. Md. Sept. 16, 2020) (citing *Twombly*, 550 U.S. at 567). And so, an antitrust conspiracy can exist where a plaintiff provides "plus factors" that suggest the "parallel behavior would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties," *SD3*, 801 F.3d at 424 (quoting *Twombly,* 550 U.S. at 556 n.4), or alleges "further circumstances pointing toward a meeting of the minds." *Id.* (quoting *Twombly,* 550 U.S. at 557).

### G. The Computer Fraud And Abuse Act

The Computer Fraud and Abuse Act is primarily a criminal statute, but this statute also permits private parties to bring a cause of action to redress a violation of the CFAA. *See* 18 U.S.C. § 1030; *see also Tech Systems, Inc. v. Pyles*, 630 F. App'x 184, 186 (4th Cir. 2015); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 645 (4th Cir. 2009).[2] A person violates the

---

[2] Such a civil suit may be brought by "[a]ny person who suffers damage or loss" resulting from a Computer Fraud and Abuse Act violation. 18 U.S.C. § 1030(g). The Computer Fraud and Abuse Act

CFAA by "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] … information from any protected computer," or "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss." 18 U.S.C. §§ 1030(a)(2)(C)-(5)(C). And so, to sustain a claim under the CFAA, a plaintiff must allege that a defendant: "(1) intentionally accessed a computer (2) without authorization or exceeding authorized access, (3) thereby obtaining information (4) either (a) contained in a financial record of a financial institution or (b) from any protected computer." *GSP Fin. Servs., LLC v. Harrison*, No. 18-cv-2307-GJH, 2021 WL 288172, at *3 (D. Md. Jan. 28, 2021).

### H. Intentional Infliction Of Emotional Distress And Breach Of Contract Claims

Under Maryland law, the elements of a claim for intentional infliction of emotional distress are: (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. *Lasater v. Guttmann*, 5 A.3d 79, 89 (Md. Ct. Spec. App. 2010), *cert. denied*, 417 Md. 502 (2011); *see also Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977) (first case to recognize a claim for intentional infliction of emotional distress in Maryland). Such claims are subject to a heightened pleading standard. *See Davenport v. Maryland*, 38 F. Supp. 3d 679, 692 (D. Md. 2014). And so, each element of an intentional infliction of emotional distress claim must be pled with specificity. *See Foor Juvenile Servs. Admin.*, 552 A.2d 947, 949 (Md. Ct. Spec. App. 1989), *cert. denied*, 316 Md. 364 (1989); *accord Parker v. Ciena Corp*., 787 F. App'x 817, 820 (4th Cir. 2019).

In Maryland, the elements of a breach of contract claim include: (1) a contractual obligation and (2) a material breach of that obligation. *Allstate Ins. Co. v. Warns*, No. 11-1846, 2012 WL 681792, at *10 (D. Md. Feb. 29, 2012) (citing *Taylor v. NationsBank, N.A.*, 365 Md. 166 (Md. 2001)). And so, plaintiffs must plead that there existed a "contractual obligation, breach, and damages" to state a plausible breach of contract claim. *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co*., No. 16-3431, 2018 WL 1471682, at *17 (D. Md. Mar. 23, 2018) (citations omitted).

---

requires that the violation must have caused "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value." *Id.* at §§ 1030(c)(4)(A)(i)(I), (g).

## I. Invasion Of Privacy, Breach Of Fiduciary Duty And Fraud Claims

Under Maryland law, "the tort of invasion of privacy is not just one tort, but encompasses four different types of invasion tied together under one title." *Mitchell v. Baltimore Sun Co*., 883 A.2d 1008, 1022 (Md. Ct. Spec. App. 2005). To state an invasion of privacy claim based upon intrusion on seclusion, a plaintiff must allege facts to show "[t]he intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." *Furman v. Sheppard*, 744 A.2d 583, 585 (Md. Ct. Spec. App. 2000). To successfully plead an intrusion upon seclusion claim, "[i]ntent is clearly required." *Mitchell*, 883 A.2d at 1022.

To establish a breach of a fiduciary duty as an independent cause of action, a plaintiff must allege facts to show: "(1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Plank v. Cherneski*, 231 A.3d 436, 466 (MD. Ct. App. 2020). In this regard, this Court has held that a broker-dealer generally "has no duty to determine the suitability of an investor's trades or to prevent the customer from losing money in a non-discretionary account." *Dunhem v. SunTrust Banks, Inc.*, No. CV AW-04-1016, 2006 WL 8457036, at *8 (D. Md. Mar. 23, 2006). Courts have also recognized that brokers of non-discretionary accounts serve "only to fulfill the mechanical, ministerial requirements of the purpose or sale of the security." *In re Enron Corp. Secs.*, 238 F. Supp. 3d 799, 843 (S.D. Tex. 2017) (citation and internal quotations omitted); *see also Dunhem*, 2006 WL 8457036, at *8. And so, courts have held that no fiduciary relationship is created between a broker and its client if the client's account is non-discretionary. *In re Enron*, 238 F. Supp. 3d at 843.

To succeed on a fraud claim under Maryland law, a plaintiff must plead and prove that the defendant: (1) made a false representation to the plaintiff; (2) knew the representation was false or was recklessly indifferent to its truth; (3) made the misrepresentation to defraud the plaintiff; (4) that the plaintiff relied on the misrepresentation, with the right to rely on it; and (5) that the plaintiff suffered a compensable injury resulting from the misrepresentation. *See Ellerin v. Fairfax Sav.*, *F.S.B.*, 652 A.2d 1117, 1123 (Md. 1995). Under Maryland law, intentional misrepresentation is not an independent tort and this claim is treated the same as a common law fraud claim. *Sass v. Andrew*, 832 A.2d 247, 261 (Md. Ct. Spec. App.. 2003) ("Fraud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent

concealment, and fraudulent inducement." (quotations omitted)); *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 671 (Tex. App. 1996) (intentional misrepresentation is "another name for common law fraud").

### J.   Professional Negligence And Section 522

Lastly, a plaintiff must allege facts to show four elements to state a professional negligence claim:  (1) that the defendant owed him a duty; (2) that the defendant breached that duty; (3) the breach caused injury to the plaintiff; and (4) that the breach resulted in damages. *See Neal v. United States*, 599 F. Supp. 3d 270, 290-91 (D. Md. 2022); *Balfour Beatty Infra., Inc. v. Rummel Klepper & Kahl, LLP*, 130 A.3d 1024, 1034 (Md. Ct. Spec. App. 2016) ("The elements required . . . for professional negligence are equivalent to the elements required in a standard negligence action; the professional, however, is held to the standard of care that prevails in his or her profession").  In addition, the Restatement (Second) of Torts § 552 provides that:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552.  Maryland courts have not, however, addressed or applied this tort within the context of a broker-client relationship.

## IV.   ANALYSIS

The MM Defendants have moved to dismiss this matter upon the following five grounds. First, the MM Defendants argue that Plaintiff's Exchange Act claims fail as a matter of law, because the claims are time-barred and the Plaintiff cannot satisfy the elements of these claims. ECF No. 134-1 at 7-17.  Second, the MM Defendants argue that the Plaintiff's Computer Fraud and Abuse Act claims also fail as a matter of law, because the Plaintiff pleads no factual allegations to show that the MM Defendants accessed his devices.  *Id*. at 17-18.  Third, the MM Defendants argue that the Plaintiff's Sherman Act claims similarly fail as a matter of law, because these claims are precluded by the Exchange Act and the Plaintiff fails to allege a Section 1 Sherman Act violation.  *Id*. at 18-23.

Fourth, the MM Defendants argue that the Plaintiff's intentional infliction of emotional distress claims also fail as a matter of law, because the second amended complaint neither alleges facts to show that the MM Defendants engaged in market manipulation or computer hacking, nor

that the Plaintiff experienced severe emotional distress as a result of such conduct. *Id*. at 23. Lastly, the MM Defendants argue that the Plaintiff's invasion of privacy claims fail as a matter of law, because the second amended complaint lacks factual allegations to show that they accessed the Plaintiff's devices, or intended to do so. *Id*. at 24-25. And so, the MM Defendants request that the Court dismiss the second amended complaint with prejudice. *Id*. at 25. The MM Defendants also request that the Court make specific findings regarding the Plaintiff's compliance with Rule 11(b) pursuant to the PSLRA. *Id*.; *see also* 15 U.S.C. S 78u-4(c)(1) and (2).

Defendant Webull also seeks dismissal of the Exchange Act and intentional infliction of emotional distress claims brought against it for reasons similar to the grounds stated by the MM Defendants. ECF No. 135 at 11-12 and 16-17. In addition, Defendant Webull argues that the Court should dismiss the claims brought against it in this matter, because: (1) the Court lacks personal jurisdiction over Defendant Webull; (2) the Plaintiff fails to state a claim for breach of fiduciary duty; (3) the Plaintiff fails to state a claim for breach of contract against Defendant Webull; (4) the Plaintiff fails to state a claim for intentional misrepresentation or common law fraud; (5) the Plaintiff cannot state a claim for professional negligence; (6) the Plaintiff fails to state a claim under Section 552; and (7) the Plaintiff has waived any claim for damages against Defendant Webull. *Id*. at 7-10, 13-16 and 17-19. And so, Defendant Webull also requests that the Court dismiss the second amended complaint with prejudice. *Id*. at 20.

The Plaintiff counters in his responses in opposition to the Defendants' motions that the Court should not dismiss this matter, because: (1) his Exchange Act claims are timely and the second amended complaint states plausible Exchange Act claims against the MM Defendants and Defendant Webull; (2) the second amended complaint states plausible claims under the CFAA; (3) the second amended complaint states plausible Sherman Act claims; and (4) the second amended complaint also states plausible claims for intentional infliction of emotional distress and invasion of privacy. ECF No. 146 at 14-56; ECF No. 147 at 18-20 and 40-42. The Plaintiff also argues that the Court should not dismiss his claims against Defendant Webull, because: (1) the Court has personal jurisdiction over Defendant Webull; (2) Defendant Webull had, and breached, a fiduciary relationship with the Plaintiff; (5) the second amended complaint plausibly alleges a breach of contract claim against Defendant Webull; (6) the second amended complaint also plausibly alleges fraud and intentional misrepresentation under Maryland law; (7)

the second amended complaint plausibly alleges a claim for professional negligence; and (8) the second amended complaint plausibly alleges a claim under Section 552.  ECF No. 147 at 13-44. And so, the Plaintiff requests that the Court deny the Defendants' motions to dismiss.  ECF Nos. 146 at 57 and 147 at 44-46.

For the reasons that follow, the Plaintiff has shown that the Court possesses specific personal jurisdiction over Defendant Webull and that his Exchange Act claims against the Defendants are not time-barred.  But a careful review of the second amended complaint shows that the Plaintiff fails to state plausible Exchange Act claims in this matter.

A careful review of the second amended complaint also makes clear that the Plaintiff fails to state plausible claims against the MM Defendants under the Computer Fraud and Abuse Act and the Sherman Act.  The second amended complaint also lacks sufficient facts to state plausible claims for intentional infliction of emotional distress against the Defendants.

In addition, a careful reading of the second amended complaint makes clear that the Plaintiff fails to state plausible claims for breach of fiduciary duty, breach of contract, intentional misrepresentation, professional negligence and a Section 552 violation against Defendant Webull.  But the Plaintiff states a plausible common law fraud claim against Defendant Webull. Lastly, Defendant Webull has not shown that the Plaintiff's damages claims in this matter are barred.  And so, the Court:  (1) GRANTS-in-PART the MM Defendants' motion to dismiss; (2) GRANTS-in-PART and DENIES-in-PART Defendant Webull's motion to dismiss; (3) DISMISSES the second amended complaint as to the MM Defendants WITH PREJUDICE; and (4) DISMISSES the Plaintiff's Exchange Act claim and claims for intentional infliction of emotional distress, breach of fiduciary duty, breach of contract, intentional misrepresentation, professional negligence and a Section 552 violation as to Defendant Webull WITH PREJUDICE.

### A.  The Court Possesses Specific Personal Jurisdiction Over Defendant Webull

As a preliminary matter, the Court is satisfied that it possesses specific personal jurisdiction over Defendant Webull to consider the Plaintiff's claims in this matter.  It is well-established that two conditions must be satisfied for this Court to exercise personal jurisdiction over Webull:  (1) the exercise of personal jurisdiction must be authorized under Maryland's long-arm statute and (2) the exercise of personal jurisdiction must comport with the due process requirements of the Fourteenth Amendment.  *See Carefirst of Md., Inc. v. Carefirst Pregnancy*

*Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). In this regard, Maryland's long-arm statute authorizes personal jurisdiction over a person, who directly or by an agent:

 (1) Transacts any business or performs any character of work or service in the State;
 (2) Contracts to supply goods, food, services, or manufactured products in the State;
 (3) Causes tortious injury in the State by an act or omission in the State;
 (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
 (5) Has an interest in, uses, or possesses real property in the State; or
 (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b); *see also Rivera v. Altec, Inc.*, No. CV ELH-21-0681, 2021 WL 2784265, at *5-6 (D. Md. July 2, 2021).

  The Court may exercise either general jurisdiction—arising from a defendant's continuous and systematic contacts with the forum state—or specific jurisdiction—arising from an "affiliation between the forum and the underlying controversy." *Ark. Nursing Home Acquisitions, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 639 (D. Md. 2020) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 582 U.S. 255, 262-63 (2017)). With regards to general jurisdiction, a corporations' "place of incorporation and principal place of business are 'paradig[m]. . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). When determining whether specific jurisdiction exists, the Fourth Circuit has formulated a three-part test in which the Court considers: "'(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Consulting Eng'rs*, 561 F.3d at 278 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)); *accord Sneha Media & Entm't, LLC v. Associated Broad. Co. P. Ltd.*, 911 F.3d 192, 198 (4th Cir. 2018); *Perdue Foods, LLC v. BRF, S.A.*, 814 F.3d 185, 188 (4th Cir. 2016); *Carefirst*, 334 F.3d at 397.

In this case, there is no genuine dispute that this Court may not exercise general personal jurisdiction over Defendant Webull, because Defendant Webull is a broker-dealer that is incorporated in Delaware, with its principal place of business located in New York. ECF No. 130 at ¶ 11. And so, the central question before the Court is whether the Plaintiff can show that the exercise of specific personal jurisdiction over Defendant Webull is appropriate in this case. The Court is satisfied that Plaintiff has done so in this case for three reasons.

First, the Plaintiff argues, and Defendant Webull does not dispute, that Defendant Webull has applied for, and been granted, a license to operate its brokerage business in the State of Maryland. ECF No. 130 at ¶ 11. Given this, Defendant Webull has purposefully availed itself of the privilege of conducting brokerage activities in Maryland. Second, the second amended complaint makes clear that the Plaintiff's claims in this matter arise out of Defendant Webull's brokerage activities in Maryland, because his claims arose during the course of Defendant Webull's operation as a broker dealer in the State. Lastly, the exercise of personal jurisdiction would be constitutionally reasonable here, because it is reasonable for Defendant Webull to anticipate that it might be subject to lawsuits in Maryland, given that it has a brokerage license to operate in the State. And so, the Court will exercise personal jurisdiction over Defendant Webull in this matter.

### B. The Plaintiff's Exchange Act Claims Are Not Time-Barred

Turning to the Plaintiff's Exchange Act claims against the Defendants, the Defendants argue without persuasion that these claims are time-barred. *See* ECF No. 134-1 at 7; ECF No. 135 at 11. The Exchange Act requires that the Plaintiff bring his claims in this matter "not later than the earlier of—(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 28 U.S.C. § 1658(b). In this case, the Plaintiff filed the original complaint on November 1, 2023. ECF No. 1. And so, to be timely the Plaintiff's Exchange Act claims must arise from conduct that occurred no later than November 1, 2021.

As the Defendants correctly observe, the second amended complaint alleges the MM Defendants engaged in a scheme to manipulate the prices of securities in the Plaintiff's portfolio in September and October 2021, and that Defendant Webull was complicit in this scheme. ECF No. 130 at ¶¶ 46, 50-54 and 62-89. The Plaintiff also alleges that he filed complaints with the Federal Trade Commission and Federal Bureau of Investigations about the alleged market

manipulation scheme on October 21, 2021. *Id*. at ¶ 55. Given this, the Plaintiff's Exchange Act claims that are based upon this, and other, conduct that occurred before November 1, 2021, are time-barred.

But, the second amended complaint also makes clear that the Plaintiff alleges that the Defendants' market manipulation scheme continued into 2022 and 2023. *See id*. at ¶¶ 58-89. The Plaintiff also alleges that he did not discover this scheme until 2023, after he started using Yahoo Finance browsers to track his portfolio. ECF No. 130 at ¶ 88.

Given these allegations, the Plaintiff persuasively argues that his Exchange Act claims are timely, to the extent that these claims are based upon conduct and violations that occurred after November 1, 2021. And so, the Court declines to dismiss the Plaintiff's Exchange Act claims as time-barred, to the extent that these claims are based upon alleged violations and conduct that occurred on or after November 1, 2021. *See, e.g., Coakley & Williams, Inc. v. Shatterproof Glass Corp*., 706 F.2d 456, 463 (4th Cir. 1983).

### C. The Plaintiff Fails To State Plausible Exchange Act Claims

While the Plaintiff's Exchange Act claims are not untimely, a careful reading of the second amended complaint shows that these claims are implausible. To state a claim of market manipulation under the Exchange Act, the Plaintiff must allege facts to show: "(1) manipulative acts; (2) damage; (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the [Defendants'] use of the mails or any facility of a national securities exchange." *ATSI Commc'ns., Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 101 (2d Cir. 2007). Because claims of market manipulation lie in fraud, these claims are also subject to the heightened pleading standard under Fed. R. Civ. P. 9(b). *Id*.; *see also Katyle v. Penn Nat. Gaming, Inc*., 637 F.3d 462, 471 n.5 (4th Cir. 2011). A plaintiff alleging scienter must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

Given this, the Plaintiff must plead his market manipulation claim with particularity, by stating "the nature, purpose, and effect of the fraudulent conduct and the roles of the [D]efendants." *Id*. at 102. To do so, the Plaintiff must plead with specificity facts "showing that an alleged manipulator engaged in market activity aimed at deceiving investors as to how other market participants have valued a security." *ATSI*, 493 F.3d at 100; *Burt v. Maasberg*, No. 12-

0464-ELH, 2013 WL 1314160, at *15 (D. Md. Mar. 31, 2013).  And so, the Court looks to the second amended complaint to determine whether this pleading sets forth "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *ATSI*, 493 F.3d at 102.

In this case, the second amended complaint makes clear that the Plaintiff fails to plead his Exchange Act claims with sufficient particularity as to each of the MM Defendants, as required under Rule 9(b).  The Plaintiff alleges that the 30 MM Defendants named in the second amended complaint conspired to manipulate the stock market to his detriment.  *See generally* ECF No. 130.  But, the Plaintiff's Exchange Act claims are asserted in the aggregate with regards to these Defendants.  ECF No. 130 at ¶¶ 45, 47, 50 and 82 (alleging generally that the MM Defendants: (1) were responsible for the cyberattack on the Plaintiff's devices; (2) exploited and used the options system to defraud the Plaintiff; and (3) conspired, coordinated and demonstrated their access to the Plaintiff's devices by the fixing and gamification of the prices of securities; and that Defendant Webull was complicit in the market manipulation scheme).

Notably, there are no factual allegations in the second amended complaint to explain which of the 30 MM Defendants engaged in the alleged market manipulation or how each MM Defendant manipulated the market.  *See generally* ECF No. 130.  Given this, the second amended complaint lacks factual allegations to connect the MM Defendants with particularity to the alleged market manipulation scheme.

The Plaintiff's argument that he sufficiently connects each MM Defendant to the alleged market manipulation scheme, because he alleges a conspiracy in the second amended complaint, is also unpersuasive.  *See* ECF No. 146 at 14.  While the second amended complaint does allege a conspiracy involving the MM Defendants, this general allegation is not sufficient to satisfy the requirements of Rule 9(b).  *ATSI*, 493 F.3d at 102; *see also Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700, 712 (E.D. Va. 2009) (granting motion to dismiss conspiracy counts because "the Complaint groups the [defendants] together with broad brush allegations instead of making specific factual allegations against individual defendants"); *Puri v. Khalsa*, 674 F. App'x 679, 687 n.2 (9th Cir. 2017) ("allegations of conspiracy do not excuse the plaintiffs from offering detailed and particularized allegations regarding each defendant's role in the fraud").

Given this, the second amended complaint fails to allege with particularity a market manipulation claim under the Exchange Act with regards to the MM Defendants.  *See ATSI*, 493

F.3d at 105 (affirming dismissal of market manipulation claims against a defendant because "[w]holly absent are … any allegations of specific acts by [the defendant] to manipulate the market, much less how those actions might have affected the market."); Fed. R. Civ. P. 9(b). And so, the Court GRANTS the MM Defendants' motion to dismiss with regards to the Plaintiff's Exchange Act claims and DISMISSES these claims as to the MM Defendants.[3]

The Plaintiff's Exchange Act claims against the MM Defendants and Defendant Webull are also implausible, because the second amended complaint lacks sufficient facts to show that the Defendants acted with scienter in connection with the alleged market manipulation scheme. The Fourth Circuit has explained that the "required state of mind" for liability under Section 10(b) is scienter, which is "a mental state embracing intent to deceive, manipulate, or defraud." *Yates v. Mun. Mortg. & Eq., LLC*, 744 F.3d 874, 884 (4th Cir. 2014). To plead scienter here, the Plaintiff must allege "either intentional or severely reckless conduct." *KBC Asset Mgmt. NV v. DXC Tech Co.*, 19 F.4th 601, 608 (4th Cir. 2021). And so, the Plaintiff must "state with particularity the facts giving rise to a *strong inference* that the [Defendants] acted with the required state of mind." *KBC*, 19 F.4th at 607 (quoting 15 U.S.C. § 78u-4(b)(2)(A)). On the other hand, if the facts alleged in the second amended complaint as a whole more plausibly suggest that the Defendants acted innocently, or even negligently, "rather than with intent or severe recklessness," the Court must dismiss the complaint. *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 624 (4th Cir. 2008); *accord* 15 U.S.C. § 78u-4(b)(3)(A) (providing that a complaint that fails to plead facts raising a "strong inference" of scienter "*shall*" be dismissed).

Here, the second amended complaint lacks factual allegations to plausibly show a strong inference that the Defendants acted with scienter and intended to deceive the Plaintiff about the prices of his securities. Notably, there are no factual allegations in the second amended complaint to show the nature of the Plaintiff's online posting and comments, or why these postings and comments would have drawn the ire of the MM Defendants, or motivated them to retaliate against the Plaintiff. *See generally* ECF No. 130. The second amended complaint similarly lacks factual allegations to show why Defendant Webull would have been motivated to retaliate against, or otherwise harm, the Plaintiff. *Id.*

---

[3] Because the Court determines that the Plaintiff fails to plead his Exchange Act claims with particularity, the Court does not reach other issues raised by the Defendants with regards to these claims.

The Plaintiff's argument that his complaint to the Securities and Exchange Commission and the fact that he previously performed legal work for one of the MM Defendants shows that the MM Defendants were aware of, and motivated by, his online activities, is also unconvincing. ECF No. 146 at 29. These facts, accepted as true, neither show that all 30 MM Defendants were aware of the Plaintiff, nor explain why these Defendants would have been motivated to retaliate against the Plaintiff. Nor do these facts explain how, or why, Defendant Webull would have been motivated to retaliate against the Plaintiff, as alleged in the second amended complaint.

Given this, the Court agrees with the Defendants that the second amended complaint fails to sufficiently allege facts to support a strong inference of scienter with respect to any of the Defendants. *See Yates*, 744 F.3d at 885. This failure is fatal to the Plaintiff's Exchange Act claims. And so, the Court also GRANTS the Defendants' respective motions to dismiss the Plaintiff's Exchange Act claims for this reason and DISMISSES these claims as to all Defendants.

### D. The Plaintiff Fails To State Plausible CFAA And Privacy Claims

The Plaintiff's Computer Fraud and Abuse Act claims against the MM Defendants are also problematic. To state a claim under the CFAA, the Plaintiff must allege facts to show that the MM Defendants: "(1) intentionally accessed a computer (2) without authorization or exceeding authorized access, (3) thereby obtaining information (4) either (a) contained in a financial record of a financial institution or (b) from any protected computer." *GSP Fin. Servs., LLC v. Harrison*, No. 18-cv-2307-GJH, 2021 WL 288172, at *3 (D. Md. Jan. 28, 2021).[4] A careful reading of the second amended complaint shows, however, that the Plaintiff has not met this burden.

To support his CFAA claims against the MM Defendants in this case, the Plaintiff alleges that that he received email and text messages designed to "phish" and gain access to his home network and devices on September 7, 2021. ECF No. 130 at ¶ 45. The Plaintiff also alleges that, shortly thereafter, certain stocks disappeared from his brokerage account's watchlist, the bid and

---

[4] The Defendants argue that the Plaintiff's CFAA claims are untimely. ECF Nos. 134-1 and 135. But affirmative defenses—such as statutes of limitation—are generally beyond the scope of a 12(b)(6) motion. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 564 (4th Cir. 2007). In addition, and as discussed above, the Plaintiff alleges ongoing conduct and violations continuing into 2022 and 2023. *See generally* ECF No. 130. And so, the Court does not find that the Plaintiff's CFAA claims are time-barred, to the extent that these claims are based upon conduct and violations occurring on or after November 1, 2021.

ask prices of certain stocks ended in identical numbers and the value of his portfolio varied. *See id*. at ¶¶ 46 and 49-52. Based upon these factual allegations, the Plaintiff surmises that the MM Defendants intentionally accessed his "computers, mobile phones, e-mail addresses, text messages, network router and electronic devices," and that the MM Defendants "could not have quoted the pattern of trades recorded by Plaintiff during the Relevant Period without [such] access." *Id*. at ¶¶ 1 and 102.

As the MM Defendants persuasively argue, the Plaintiff's allegations are merely speculative and conclusory and, thus, insufficient to state a claim under the CFAA. *See, e.g., Oce North America, Inc. v. MCS Services, Inc.*, 748 F. Supp. 2d 481, 488 (D. Md. 2010). Given this, the second amended complaint fails to allege facts that, taken as true, show that the MM Defendants intentionally accessed the Plaintiff's devices. And so, the Court GRANTS the MM Defendants' motion to dismiss the Plaintiff's CFAA claims and DISMISSES these claims.

For similar reasons the second amended complaint lacks sufficient factual allegations to support the Plaintiff's invasion of privacy claims. To state an invasion of privacy claim, based upon intrusion on seclusion, the Plaintiff must allege facts to show "[t]he intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." *Furman v. Sheppard*, 744 A.2d 583, 585 (Md. Ct. Spec. App. 2000)). The Plaintiff's invasion of privacy claims in this case are based upon the same alleged hacking into his personal devices that gives rise to his claims under the CFAA. ECF No. 130 at ¶ 112. Given this, these claims also fail because the second amended complaint lacks facts to plausibly shows that the MM Defendants intentionally accessed any of the Plaintiff's devices to invade his privacy. And so, the Court also GRANTS the MM Defendants' motion to dismiss the Plaintiff's invasion of privacy claims and DISMISSES these claims.

### E. The Plaintiff Fails To State Plausible Sherman Act Claims

A careful reading of the second amended complaint also shows that the Plaintiff fails to state plausible claims against the MM Defendants under the Sherman Act. To establish a restraint of trade in violation of Section 1 of the Sherman Act, the Plaintiff "must prove, and therefore plead, '(1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint on trade.'" *Loren Data Corp. v. GXS Inc.*, 501 F. App'x. 275, 279 (4th Cir. 2012) (quoting *Dickson v. Microsoft Corp.*, 309 F.3d 193, 202 (4th Cir. 2002). In this regard, the Supreme Court has held that a complaint that pleads "an allegation of parallel conduct and a bare

assertion of conspiracy" is insufficient to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). And so, without more, "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 557.

In this case, the Plaintiff's Sherman Act claims against the MM Defendants appropriately rely upon alleged parallel conduct by these Defendants, rather than an actual agreement. *See generally* ECF No. 130. But the factual allegations to show the conspiracy among the MM Defendants are, again, speculative and conclusory. For example, the Plaintiff alleges in the second amended complaint that the MM Defendants engaged in a conspiracy to unreasonably restrain trade, because "the pricing of the [Relevant Securities] were quoted to [end] in the same numbers," and "the MM Defendants, as market makers, are the only exchange members obliged to provide continuous Bid/Ask price quotations on the Relevant Securities." ECF No. 130 at ¶ 50; *see also* ECF No. 130 at ¶¶ 45-49 (alleging that the "MM Defendants used the options system to defraud [the] Plaintiff" and the "MM Defendants obtained access into [the] Plaintiff's devices"). The Plaintiff further alleges that the MM Defendants "conspired, coordinated and demonstrated" their access to his personal devices "through the fixing and gamification of prices of the relevant Securities." *Id.* at ¶¶ 50 and 72.

While the Plaintiff need not plead facts to show every detail of this alleged market manipulation conspiracy, he must do more than merely allege that the MM Defendants engaged in such parallel conduct. *See SD3, LLC v. Black & Decker*, 801 F.3d 412, 422-23 (4th Cir. 2015) ("A plaintiff in a Section 1 case cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group"). Because the Plaintiff fails to do so here, the Court also GRANTS the MM Defendants' motion to dismiss the Plaintiff's Sherman Act claims and DISMISSES these claims.[5]

### F. The Plaintiff Fails To State Plausible Intentional Infliction Of Emotional Distress Claims

The Plaintiff's intentional infliction of emotional distress claims against the MM Defendants and Defendant Webull are equally problematic. To state a claim for intentional infliction of emotional distress, the Plaintiff must allege facts to show: (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful

---

[5] Because the Court dismisses the Plaintiff's Sherman Act claims for failure to sufficiently allege facts to show a conspiracy among the MM Defendants, the Court does not address the MM Defendants' other arguments with regards to this claim.

conduct and the emotional distress; and (4) the emotional distress was severe. *Lasater v. Guttmann*, 5 A.3d 79, 89 (Md. Ct. Spec. App. 2010), *cert. denied*, 417 Md. 502 (2011). Such claims are also subject to a heightened pleading standard. *See Davenport v. Maryland*, 38 F. Supp. 3d 679, 692 (D. Md. 2014). Relevant here, the Plaintiff must allege facts to show that the Defendants "either desired to inflict severe emotional distress, knew that such distress was certain or substantially certain to result from his conduct, or acted recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow." *See Foor Juvenile Servs. Admin.*, 552 A.2d 947, 949 (Md. Ct. Spec. App. 1989), *cert. denied*, 316 Md. 364 (1989).

To show "extreme and outrageous conduct," the Plaintiff must also allege facts to show that the Defendants' behavior was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Lasater*, 5 A.3d at 89 (citing *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)) (internal quotation marks omitted). Lastly, to show "emotional distress," the Plaintiff must also allege facts to show that he "suffered a severely disabling emotional response to the [Defendants'] conduct," and that the distress was so severe that "no reasonable man could be expected to endure it." *Thacker v. Cty of Hyattsville*, 762 A.2d 172, 197 (Md. 2000) (citing *Harris*, 380 A.2d at 616).

The Defendants persuasively argue that the second amended complaint lacks factual allegations to make these showings in this case for several reasons. First, as discussed above, the second amended complaint lacks facts to connect each of the 30 MM Defendants to the alleged extreme and outrageous conduct in this case—the market manipulation scheme. This failure is fatal to the Plaintiff's intentional infliction of emotional distress claims against the MM Defendants. *See Asafo-Adjei v. First Save. Mortg. Corp.*, No. 09-cv-2184-RWT, 2010 WL 730365, at *5 (D. Md. Feb. 25, 2010) (dismissing an intentional infliction of emotional distress claim because the "Plaintiff fail[ed] to identify which Defendants caused his emotional distress").

These claims also fail as a matter of law with regards to all Defendants, because the second amended complaint lacks facts to show that the Plaintiff suffered a severely disabling emotional response to the Defendants' alleged conduct, and that his distress was so severe that "no reasonable man could be expected to endure it." *Thacker*, 762 A.2d at 197 (citing *Harris*,

380 A.2d at 616). In the second amended complaint, the Plaintiff alleges that he "suffered severe emotional distress and depression, withdrew from friends, family and social contacts, failed to meet financial obligations, contemplated suicide several times, suffered mental health breakdown, persistent high blood pressure, and had counseling," as a result of the Defendants' conduct. ECF No. 130 at ¶ 110. The Plaintiff also alleges that Defendant Webull "intentionally and willfully caused [him] severe emotional distress "through engaging in unlawful acts that, among other things, [were] unprofessional, unethical, and fraudulent contrivances that caused him to have a mental breakdown and receive counseling." *Id*. at ¶126.

But, the second amended complaint does not allege facts to show that the Plaintiff was unable to function, or to tend to necessary matters, as required to satisfy the "severe emotional distress" element of his intentional infliction of emotional distress claims. *See generally* ECF No. 130; *see also Mitchell v. Baltimore Sun Co.*, 883 A.2d 1008, 1024-1025 (Md. Ct. Spec. App. 2005) (citing *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1064 (Md. Ct. Spec. App. 1986)) (holding a plaintiff "must be unable to function; one must be unable to tend to necessary matters"). Given this, the Plaintiff has not pled facts sufficient to state a claim for an intentional infliction of emotional distress.[6] And so, the Court GRANTS the Defendants' respective motions to dismiss the Plaintiff's intentional infliction of emotional distress claims and DISMISSES these claims as to all Defendants.

### G. The Plaintiff Fails To State Plausible Breach Of Fiduciary Duty, Professional Negligence, Intentional Misrepresentation, Section 552 Violation And Breach Of Contract Claims Against Defendant Webull

Turning to the Plaintiff's remaining claims against Defendant Webull, the second amended complaint makes clear that the Plaintiff fails to state a plausible breach of fiduciary duty claim, because the second amended complaint lacks facts to show the existence of fiduciary relationship with Defendant Webull. To state a claim for breach of fiduciary duty, the Plaintiff must plead facts to show: "(1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Plank v. Cherneski*,

---

[6] Defendant Webull also argues with persuasion that the Plaintiff's intentional infliction of emotional distress claim is not plausible, because its alleged conduct of displaying incorrect portfolio values, liquidating the Plaintiff's account and failing to investigate the Plaintiff's claims of market manipulation, is not "extreme and outrageous" conduct. ECF No. 135 at 16-17; ECF No. 148 at 13. Because the Court determines that the Plaintiff fails to state a plausible intentional infliction of emotional distress claim, the Court does not address whether the Plaintiff's intentional infliction of emotional distress claim is barred by the economic loss rule.

231 A.3d 436, 466 (Md. 2020). But, the second amended complaint contains no facts to show a fiduciary relationship between the Plaintiff and his broker-dealer, Defendant Webull. *See* ECF No. 130. Indeed, as the Plaintiff appears to acknowledge in his response in opposition to Defendant Webull's motion to dismiss, this Court has held that a broker-dealer generally "has no duty to determine the suitability of an investor's trades or to prevent the customer from losing money in a non-discretionary account." *Dunhem v. SunTrust Banks, Inc.*, No. CV AW-04-1016, 2006 WL 8457036, at *8 (D. Md. Mar. 23, 2006). Courts have also held that the brokers of non-discretionary, or self-directed accounts—like the account at issue here—serve "only to fulfill the mechanical, ministerial requirements of the purpose or sale of the security;" in other words, to execute transactions or orders consistent with a client's instructions. *In re Enron Corp. Secs.*, 238 F. Supp. 3d 799, 843 (S.D. Tex. 2017) (citation and internal quotations omitted); *see also Dunhem*, 2006 WL 8457036, at *8. Given this, the facts alleged in the second amended complaint simply do not show that a fiduciary relationship existed between the Plaintiff and Defendant Webull.

The Plaintiff's argument that a fiduciary relationship was created in this case is also unconvincing. The Plaintiff argues that a fiduciary relationship with Defendant Webull arose here "by voluntary assumption" and "by operation of law," because Defendant Webull agreed to investigate his market manipulation complaint and assumed de facto control of his account. ECF No. 147 at 32. But the Plaintiff fails to explain how Defendant Webull's agreement to investigate his complaint could create such a fiduciary relationship. *Id.* The Plaintiff's claim that Defendant Webull assumed de facto control of his account also appears to be belied by the terms of the Webull Margin Agreement, which allows Defendant Webull to make trades on the Plaintiff's behalf when certain criteria is met. ECF No. 135-3 at § 4.

Given this, the Court agrees with Defendant Webull that the Plaintiff's breach of fiduciary duty claim fails as a matter of law. And so, the Court GRANTS Defendant Webull's motion to dismiss the Plaintiff's breach of fiduciary duty claim and DISMISSES this claim.

The Plaintiff's professional negligence claim against Defendant Webull is also not plausible. To state a claim for professional negligence, the Plaintiff must allege facts to show: (1) that Defendant Webull owed him a duty; (2) that Defendant Webull breached that duty; (3) the breach caused injury to the Plaintiff; and (4) that the breach resulted in damages. *See Neal v. United States*, 599 F. Supp. 3d 270, 290 (D. Md. 2022); *Floyd v. Hefner*, 556 F. Supp. 2d 617,

660 (S.D. Tex. 2008). As discussed above, the second amended complaint lacks facts to show that Defendant Webull had a fiduciary relationship with the Plaintiff. And so, the second amended complaint similarly lacks facts to show that Defendant Webull breached any fiduciary duty created by such a relationship to support this claim.

The Fourth Circuit has also held that a broker dealer that makes a security available to consumers has no duty to warn that an investment may be imprudent. *Banca Cremi, S.A. v. Alex. Brown & Sons, Inc.*, 132 F.3d 1017, 1038 (4th Cir. 1997). And so, the Plaintiff cannot rely upon a duty to warn regarding his investments to support his professional negligence claim.

The Plaintiff does, however, correctly observe in his response in opposition that the law does not provide that a broker-dealer like Defendant Webull owes *no* duty to its client. ECF No. 147 at 39. But this point cannot revive his claim here, because the second amended complaint fails to allege any facts to show that a duty is owed to the Plaintiff in this case. ECF No. 130 at ¶ 128 (generally alleging that Defendant Webull owed the Plaintiff a "professional duty of care as a broker-dealer"). And so, the Court GRANTS Defendant Webull's motion to dismiss the Plaintiff's professional negligence claim and DISMISSES this claim.

The Plaintiff's intentional misrepresentation and Section 552 violation claims against Defendant Webull are also implausible. As the Plaintiff appears to concede in his response in opposition, a standalone claim for intentional misrepresentation is not permissible under Maryland law. *See Sass v. Andrew*, 832 A.2d 247, 261 (Md. App. Ct. 2003). The Plaintiff also fails to identify any case law to show that the State of Maryland has recognized and applied Section 552 within the context of the relationship between a broker-dealer and its client. *See generally* ECF No. 147. And so, the Court also GRANTS Defendant Webull's motion to dismiss the Plaintiff's intentional misrepresentation and Section 552 violation claims and DISMISSES these claims.

Lastly, the second amended complaint fails to state a plausible breach of contract claim against Defendant Webull. To state a breach of contract claim, the Plaintiff must allege facts to show, among other things, the existence of a contractual obligation and a breach of that obligation. *See, e.g.*, *Transamerica Premier Life Ins. v. Selman & Co.*, 401 F. Supp. 3d 576, 596 (D. Md. 2019); *Kim v. Nationwide Mut. Ins.*, 614 F. Supp. 3d 475, 492 (N.D. Tex. 2022). But, as Defendant Webull correctly observes, the second amended complaint contains merely conclusory allegations that Webull "failed to perform according to contract" and breached its

31

brokerage agreements with Plaintiff. ECF No. 130 at ¶¶ 6, 78 and 120-21. Notably, the second amended complaint is devoid of any factual allegations to identify the contractual obligations that Defendant Webull allegedly failed to satisfy. *Id.*

In an apparent acknowledgement of this deficiency, the Plaintiff argues in his response in opposition that the alleged contractual obligations in this case are based upon an oral brokerage contract that he entered into with Defendant Webull. ECF No. 147 at 32. But, again, the Plaintiff alleges no facts in the second amended complaint to show what Defendant Webull's contractual obligations were under this alleged oral contract. ECF No. 130 at ¶ 121. And so, the Court also GRANTS Defendant Webull's motion to dismiss the Plaintiff's breach of contract claim and DISMISSES this claim.

### H. The Plaintiff States A Claim For Fraud Against Defendant Webull

While a close question, the Plaintiff is on somewhat firmer ground with regards to his common law fraud claim against Defendant Webull. To state this claim, the Plaintiff must plead facts to show Defendant Webull: (1) made a false representation to the Plaintiff; (2) knew the representation was false or was recklessly indifferent to its truth; (3) made the misrepresentation to defraud Plaintiff; (4) that Plaintiff relied on the misrepresentation, with the right to rely on it; and (5) that Plaintiff suffered a compensable injury resulting from the misrepresentation. *See Ellerin v. Fairfax Sav., F.S.B.*, 652 A.2d 1117, 1123 (Md. 1995); *see also Ernst & Young, L.L.P. v. P. Mut. Lif Ins.*, 51 S.W.3d 573, 577 (Tex. 2001). The Plaintiff must also satisfy Rule 9(b)'s heightened pleading standard. *See Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 741-42 (N.D. Tex. 2014); *see also McCormick v. Medtronic, Inc.*, 101 A.3d 467, 492 (Md. Ct. Spec. App. 2014) ("Maryland courts have long required parties to plead fraud with particularity").

The Court is satisfied that the Plaintiff has met his burden with regards to his fraud claim for several reasons. First, a careful reading of the second amended complaint shows that this pleading describes with particularity the alleged false representations that Defendant Webull made to the Plaintiff, to support this fraud claim. Notably, the Plaintiff alleges in the second amended complaint that Defendant Webull made false representations to him, when an employee of Defendant Webull told him that the company would investigate his market manipulation complaint on November 26, 2021, and when an employee of Defendant Webull, subsequently sent an email to the Plaintiff providing certain "initial observations" regarding the investigation into the Plaintiff's complaint on December 21, 2021. ECF No. 130 at ¶¶ 62-65. And so, the

second amended complaint describes the who, what, when and where with regards to these alleged false representations.

 The second amended complaint also contains facts that, taken as true, show that Defendant Webull either knew the aforementioned representations were false, or was recklessly indifferent to their truth. In paragraphs 63 and 64 of the second amended complaint, the Plaintiff alleges that Defendant Webull knew its representations regarding the investigation of his complaint were false, because, among other things, Defendant Webull would not have blamed the change in his account's value on "opening rotations" if Defendant Webull had watched the videos that he provided in support of the investigation. *Id.* at ¶ 64.

 The second amended complaint also contains facts to show that Defendant Webull made these alleged misrepresentations to defraud Plaintiff and that that Plaintiff relied on the misrepresentations. In this regard, the Plaintiff alleges that Defendant Webull deceived him into believing that it would investigate his concerns and that Defendant Webull sold the assets in his portfolio while it was investigating the alleged market manipulation scheme. *Id.* at ¶¶ 66-69. Lastly, the second amended complaint alleges that the Plaintiff suffered a compensable injury resulting from the aforementioned false representations, including actual damages in the amount of $1,000,000. ECF No. 130 at Prayer for Relief.

 Given this, the Plaintiff's factual allegations, taken as true, are sufficient to state a plausible claim for common law fraud against Defendant Webull.[7] And so, the Court DENIES Defendant Webull's motion to dismiss this claim.

## I. Defendant Webull Has Not Shown That The Plaintiff Cannot Recover Damages

 As a final matter, the Court declines to dismiss the Plaintiff's surviving claim against Defendant Webull upon the grounds that he cannot recover damages, because there is a genuine factual dispute in this case about whether the Plaintiff entered into certain agreements with Defendant Webull and Apex related to the Plaintiff's brokerage account. Notably, Defendant

---

[7] The Court's determination that the Plaintiff states a plausible fraud claim against Defendant Webull does not mean that the Plaintiff has shown that he can prevail on this claim. As Defendant Webull correctly observes, the Plaintiff's belief that the company's representations were false is not sufficient to prove the falsity of these statements. But the Plaintiff need only show that the allegations in the second amended complaint, taken as true, are sufficient to plausibly show that Defendant Webull made false representations to the Plaintiff. Because the Plaintiff has done so here, dismissal of his common law fraud claim is not warranted.

Webull argues that the Plaintiff agreed in those agreements that he "will not hold [Webull and Apex] responsible for the availability, accuracy, timeliness, completeness, or security of trading securities through [Webull's and Apex's] platform" and that, as a result, the Plaintiff's damages claims in this case are barred by the terms of these agreements. ECF No. 135 at 19; *see also* ECF No. 135-3 at § 21. But the Plaintiff counters in his sworn affidavit that he never executed the agreements at issue. ECF No. 147-1 at 3-5.

Given this, the Court must resolve the factual dispute regarding whether the Plaintiff entered into the agreements at issue, before the Court can determine whether the Plaintiff is barred from recovering damages from Defendant Webull. And so, the Court DENIES Defendant Webull's motion to dismiss on this final issue WITHOUT PREJUDICE.

## V.   CONCLUSION

In sum, the Plaintiff has shown that the Court possesses specific personal jurisdiction over Defendant Webull and that his Exchange Act claims against the Defendants are not time-barred. But a careful review of the second amended complaint shows that the Plaintiff fails to state plausible Exchange Act claims in this matter. A careful review of the second amended complaint also makes clear that the Plaintiff fails to state plausible claims against the MM Defendants under the CFAA and Sherman Act. The second amended complaint also lacks sufficient facts to state plausible claims for intentional infliction of emotional distress and invasion of privacy against the Defendants.

In addition, the Plaintiff fails to state plausible claims for breach of fiduciary duty, breach of contract, intentional misrepresentation, professional negligence and a Section 552 violation against Defendant Webull. But the second amended complaint states a plausible common law fraud claim against Defendant Webull. Lastly, Defendant Webull has not shown that the Plaintiff's damages claims are barred. And so, for the foregoing reasons, the Court:

(1) **GRANTS-in-PART** the MM Defendants' motion to dismiss;

(2) **GRANTS-in-PART** and **DENIES-in-PART** Defendant Webull's motion to dismiss;

(3)  **DISMISSES** the second amended complaint as to the MM Defendants **WITH PREJUDICE**; and

(4) **DISMISSES** the Plaintiff's Exchange Act claim and claims for intentional infliction of emotional distress, breach of fiduciary duty, breach of contract, intentional

misrepresentation, professional negligence and a Section 552 violation as to

Defendant Webull **WITH PREJUDICE**.

A separate Order shall issue.

**IT IS SO ORDERED.**

<u>s/Lydia Kay Griggsby</u>
LYDIA KAY GRIGGSBY
United States District Judge