IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| JUDEKENNETH MADUKA ORJI, | ) ) ) Civil Action No. 23-cv-02986-LKG ) ) Dated: June 4, 2026 ) ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| WEBULL FINANCIAL, LLC., | |
| Defendant. | |

MEMORANDUM OPINION ON WEBULL'S
MOTION FOR ATTORNEYS' FEES AND COSTS

I.     INTRODUCTION

In this civil action, the Plaintiff, Judekenneth Maduka Orji, alleged, among other things, that the Defendant Webull Financial, LLC ("Webull") and several other defendants engaged in a conspiracy to deceive and defraud him, by fixing, paralleling and manipulating the quotations and prices of certain securities, during the period September 1, 2021, to the present, in violation of the Exchange Act §10(b), 15 U.S.C. § 78j(b), and that Webull breached a brokerage contract and violated its obligations as a broker- dealer, by, among other things, negligently providing brokerage services and failing to follow Financial Industry Regulatory Authority, Inc. ("FINRA") industry guidelines, in violation of, among other things, the Exchange Act § 10(b). ECF Nos. 130 and 133.  On November 24, 2025, the Court issued an Order that, among other things, awarded attorney's fees and costs to Webull in amount to be determined by the Court, pursuant to 15 U.S.C. S 78u-4(c). ECF No. 208.

On December 10, 2025, Webull filed a motion for attorneys' fees and costs, pursuant to the Court's November 24, 2025, Order and 15 U.S.C. § 78u-4(c).  ECF Nos. 221, 221-1, 221-2 and 221-3.  The Plaintiff has not filed a response to the motion.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** Webull's motion for attorneys' fees and costs (ECF No. 221); and (2) **AWARDS** Webull **$14,406.95** in attorneys' fees and **$174.00** in costs.

1

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.    Factual Background

Case Background

The Plaintiff commenced this civil action on November 1, 2023, and he asserted eight causes of action against Webull, including a claim under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5(b) and (c) thereunder (the "Exchange Act Claim").  ECF No. 1.  In the Exchange Act Claim, the Plaintiff alleged, among other things, that Webull participated in a market manipulation scheme by conspiring with over thirty market-maker defendants to fix, parallel, and manipulate the quotations and prices of certain securities in Plaintiff's portfolio, by providing false and misleading account values, issuing improper margin notices, and wrongfully liquidating his portfolio assets.  *See id.*; ECF No. 130 at ¶¶  1, 6 and 115–116.

On March 19, 2025, the Court granted-in-part and denied-in part Webull's motion to dismiss the Exchange Act Claim and the breach of contract claim, and the Court dismissed the Plaintiff's Exchange Act Claim.  ECF No. 154.  The Court also ordered the parties to submit supplemental briefing regarding the Court's mandatory review of this matter for compliance with Fed. R. Civ. P. 11(b), pursuant 15 U.S.C. § 78u-4(c)(1).  *Id*.

On April 16, 2025, Webull filed a supplemental brief.  ECF No. 166.  On May 6, 2025, the Plaintiff filed a supplemental responsive brief.  ECF No. 169.  On May 14, 2025, Webull filed a supplemental reply brief.  ECF No. 172.  And so, on November 24, 2025, the Court entered an Order holding, among other things, that the Plaintiff failed to comply with Fed. R. Civ. P. 11 in litigating his Exchange Act Claim against Webull and awarding Webull its reasonable attorneys' fees and costs in an amount to be determined by the Court.  ECF No. 208 at 7–8.

Webull's Motion for Attorneys' Fees

On December 10, 2025, Webull filed a motion for attorneys' fees and costs, seeking to recover attorneys' fees in the amount of **$66,405.90** and costs in the amount of **$174.00**.  ECF

---

[1] The facts recited herein are taken from the complaint, the second amended complaint; the Court's November 24, 2025, Order finding a Rule 11 violation and awarding attorneys' fees; Webull's motion for attorneys' fees and costs and the certification of Rachel Maimin in support thereof; and the Thomson Reuters Financial Insights AmLaw 200 Rate Survey submitted in support of the motion. ECF Nos. 130, 133, 208, 221, 221-1, and 221-2.  Unless otherwise stated, the facts recited herein are undisputed.

2

No. 221.  Webull has also filed a sworn Certification of its lead counsel, Rachel Maimin, Esquire, in support of the motion (the "Maimin Certification").  ECF No. 221-1.  In the Maimin Certification, Ms. Maimin states that Webull retained the law firm of Lowenstein Sandler LLP ("Lowenstein Sandler") as its counsel in this matter in November 2023.  *Id.* at ¶ 11.  Ms. Maimin also states that she is a partner at Lowenstein Sandler and that the law firm is a national law firm with over 350 attorneys in New York, NY, with offices also located in Roseland, NJ, Washington, DC, Palo Alto, California and Centerville, UT.  *Id.* at ¶¶ 2, 4 and 10.

In addition, Ms. Maimin represents to the Court that the following eight lawyers have worked on this litigation:

Rachel Maimin—Ms. Maimin has been practicing law since 2005, specializing in criminal and complex commercial litigation.  *Id.* at ¶ 3.  Prior to joining Lowenstein Sandler in 2019, Ms. Maimin served as an Assistant United States Attorney in the Southern District of New York for approximately nine years.  *Id.*

Doreen M. Edelman – Ms. Edelman is a partner at Lowenstein Sandler, and she has been practicing law since 1987.  *Id.* at ¶ 5.  Ms. Edelman served as local counsel for Webull in this matter and she reviewed filings and declarations.  *Id.*

Markiana Julceus—Ms. Julceus is a counsel in Lowenstein Sandler's litigation department, and she has been practicing law since 2017.  *Id.* at ¶ 6.  Ms. Julceus has over seven years of litigation experience and her work on this matter involved developing overall case strategy, drafting and overseeing the preparation of briefs and court filings, and preparing for and attending court conferences.  *Id.*

Cassandra Essert—Ms. Essert is a fifth-year associate in Lowenstein Sandler's litigation department, and she has been practicing law since 2020.  *Id.* at ¶ 7.  Ms. Essert's work on this matter involved developing overall case strategy, drafting briefs and court filings, conducting legal research, and preparing for and attending court conferences.  *Id.*

Pati Candelario—Ms. Candelario is a fourth-year associate in Lowenstein Sandler's litigation department, and she has been practicing law since 2021.  *Id.* at ¶ 8.  Ms. Candelario's work on this matter involved conducting and analyzing legal research, analyzing Plaintiff's pleadings, and conducting legal citation and record checks in connection with filings.  *Id.*

Nina Renee Rodriguez—Ms. Rodriguez is a fourth-year associate in Lowenstein Sandler's litigation department, and she has been practicing law since 2021.  *Id.* at ¶ 9.  Ms. Rodriguez's

work on this matter involved drafting and preparing briefs and court filings, conducting and analyzing legal research, and conducting legal citation and record checks in connection with filings. *Id.*

Ms. Maimin also states that:

> Lowenstein Sandler attorneys and support staff have undertaken numerous tasks over the course of this litigation in connection with the Plaintiff's Exchange Act [C]laim and the sanctions related-briefing. Lowenstein Sandler's attorneys were required to do extensive research to determine the merits of the Plaintiff's Exchange act [C]laim, the draft an opening brief and reply brief that concerned the same, among other things (ECF Nos. 135, 148.) Lowenstein Sandler's attorneys were also obligated to draft a brief regarding the parties' compliance with Federal rule of procedure 11. (ECF No. 172.) Additionally, counsel reviewed and annotated Plaintiff's forty-five page opposition brief to Webull's motion to dismiss, his forty-five page Complaint (ECF No. 1), his forty-five page First Amended Complaint, and his forty-five page Second Amended Complaint. Counsel also prepared for and appeared at status conferences scheduled by the Court regarding the above issues. Ms. Grant drafted and prepared multiple documents for filing, as detailed in Webull's brief.

*Id.* at ¶ 21 (citations omitted). Ms. Maimin also states that two paralegals and/or support staff worked on the case - Giselle Grant and Carrie Hayter. *Id*. at ¶ 12. And so, Ms. Maimin represents to the Court that the aforementioned attorneys spent 160.5 hours litigating this case and that paralegals and professional support staff at the firm also spent an additional 4.9 hours supporting the case. *See* ECF No. 221 at 8–17.[2]

Webull acknowledges in its motion for attorneys' fees and costs that the efforts spent by its counsel in litigating the Plaintiff's Exchange Act Claim cannot be precisely segregate from the work on other aspects of this case. ECF No. 221 at 4. And so, Webull has allocated the attorneys fees in this case proportionally, based on the percentage of its motion to dismiss briefing devoted to the Exchange Act Claim, to be 20% of the overall work on the case. *Id*.

---

[2] Neither Webull's motion, nor the supporting Certification of Rachel Maimin provide the total number of hours expended on this matter. And so, the Court has calculated the total hours expended, and allocated of these hours, based upon the individual time entries provided in support of Webull's motion.

With regards to the hourly rates billed in this case, Ms. Maimin represents to the Court that attorneys and support staff working on this case have the following hourly rates for 2024 and 2025, respectively:

| Timekeeper | Hourly Rate (2024) | Hourly Rate (2025) |
|---|---|---|
| Doreen Edelman (Partner) | $1,270.00 | N/A |
| Rachel Maimin (Partner) | $1,295.00 | $1,425.00 |
| Markiana Julceus (Counsel) | $885.00 | $975.00 |
| Cassandra Essert (5th Year Associate) | $785.00 | $895.00 |
| Pati Candelario (4th Year Associate) | $715.00 | N/A |
| Nina Rodriguez (4th Year Associate) | N/A | $865.00 |
| Giselle Grant | $340.00 | $375.00 |
| (Paralegal) Carrie Hayter (Lowenstein Sandler Knowledge and Research Services) | N/A | $410.00 |

ECF No. 221-1 at ¶ 12. In this regard, Ms. Maimin also represents that the aforementioned rates are normal and customary for lawyers and support staff performing similar services at law firms of comparable size located in the New York, New Jersey, and Washington, DC areas. *Id.* at ¶ 13.

Lastly, Ms. Maimon represents to the Court that Webull expended **$50.62** for Westlaw legal research and **$123.38** for PACER court research fees in connection with the litigation of the Plaintiff's Exchange Act Claim. ECF No. 221 at 14–15 and 20. And so, Webull seeks to recover attorney's fees in the amount of **$66,405.90** and costs in the amount of **$174.00** from the Plaintiff.  for the following expenses:

## III. LEGAL STANDARDS

### A.    Exchange Act Compliance And Fed. R. Civ. P. 11

Pursuant to 15 U.S.C. § 78u-4(c)(1):

> In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b)

of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

15 U.S.C. § 78u-4(c)(1).  And so, if the Court makes a finding pursuant to 15 U.S.C. § 78u-4(c)(1) that a party or an attorney violated any requirement of Fed. R. Civ. P. 11, "as to any complaint, responsive pleading, or dispositive motion, the court shall impose sanctions on such party or attorney in accordance with Rule 11 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(c)(2).

In this regard, Fed. R. Civ. P. 11(c)(4) allows the Court to award "part or all of the reasonable attorney's fees and other expenses directly resulting from" a Rule 11 violation. Fed. R. Civ. P. 11(c)(4).  In addition, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(c), independently mandates that, upon dismissing a securities action, the Court shall make specific findings as to whether each party and its counsel complied with Rule 11(b), and shall impose sanctions on any party or attorney that has violated that rule. 15 U.S.C. § 78u-4(c)(1) and (2). Where, as here, the Court finds a Rule 11 violation, an award of reasonable attorneys' fees and expenses directly resulting from the violation is an appropriate sanction. *See* Fed. R. Civ. P. 11(c)(4); *Aldmyr Sys., Inc. v. Friedman*, 215 F. Supp. 3d 440, 468 (D. Md. 2016).

### B.    Attorneys' Fees

The Fourth Circuit has recognized "two main methods for calculating the reasonableness of attorney's fees—the lodestar method and the percentage-of-recovery method," and a "district court may choose the method it deems appropriate based on its judgment and the facts of the case." *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022).   The lodestar amount is "a reasonable hourly rate multiplied by hours reasonably expended."  *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (quoting *Grissom*, 549 F.3d at 320–21; *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)); *see also De La Cruz v. Chopra*, No. 18-0337, 2018 WL 2298717, at *2 (D. Md. May 21, 2018) (the lodestar method "multiplies the number of hours reasonably expended by a reasonable hourly rate").

This Court has held that an hourly rate is reasonable when it is "in line with 'prevailing market rates in the relevant community' for the type of work for which [the attorney] seeks an award." *Aldmyr Sys., Inc. v. Friedman*, 215 F. Supp. 3d 440, 468 (D. Md. 2016) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)).  In this regard, the Court uses the Fitzpatrick

Matrix as a guide a guide to determine the reasonableness of requested attorney's fees.  L.R. App. B. (D. Md. 2025).  The Court is also guided by the following factors that the Fourth Circuit has identified for determining the amount of a sanction under Fed. R. Civ. P. 11: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation."  *In re Kunstler*, 914 F.2d 505, 523 (4th Cir. 1990) (citing *White v. Gen. Motors Corp.*, 908 F.2d 675 (10th Cir. 1990)).

## IV.  ANALYSIS

### A.    The Court Reduces The Amount Of The Requested Attorneys' Fees

As an initial matter, while the Court is satisfied that the number of hours that Webull represents that its attorneys spent defending the Plaintiff's Exchange Act Claim is reasonable, the Court is concerned that the amount of attorney's fees requested by Webull is excessive, given the Plaintiff's status and the purpose of awarding such fees under Fed. R. Civ. P. 11.  And so, the Court will reduce the amount of attorney's fees to be awarded in this matter for the reasons that follow.

Webull represents to the Court that attorneys at Lowenstein Sandler spent 160.5 hours litigating this case and that the law firm's paralegals and professional support staff also spent an additional 4.9 hours supporting the case, for a total of 165.4 hours.  *See* ECF No. 221 at 8–17.  In this regard, Ms. Maimin states in her sworn Certification that the following eight attorneys and/or paralegals have worked on this case: Rachel Maimin (Partner); Doreen Edelman (Partner); Markiana Julceus (Counsel); Cassandra Essert (Associate); Pati Candelario (Associate); Nina Renee Rodriguez (Associate); Giselle Grant (Paralegal); and Carrie Hayter (Knowledge and Research Services).  ECF No. 221-1 at ¶ 12.

Webull also estimates that approximately 20% of the total hours worked on its motion to dismiss case are attributable to work defending the Plaintiff's Exchange Act Claim.  ECF No. 221 at 7.  And so, Webull seeks to recover its attorney's fees for approximately 20% of the total hours billed for work on its motion to dismiss, and 100% of the total hours billed for work relating to the Rule 11 sanctions briefing and its fee petition in this case.  *See id.* at 7–16.

The Court is satisfied that the amount of time spent by Webull's attorneys defending the Plaintiff's Exchange Act Claim is reasonable, given the nature of this claim and the litigation history of this case.  Notably, the Plaintiff commenced this litigation on November 1, 2023, and

Webull litigated the Plaintiff's Exchange Act Claim for approximately two years thereafter.  *See generally* ECF No. 208.  The litigation involved, among other things, the briefing of Webull's motion to dismiss and several amendments to the Plaintiff's complaint.  ECF Nos. 87, 130, 134 and 135.

As Ms. Maimin explains in her Certification, the attorneys and support staff working on this case on behalf of Webull "were required to do extensive research to determine the merits of the Plaintiff's Exchange act [C]laim," and were obligated "to draft a brief regarding the parties' compliance with Federal Rule Civil Procedure 11."  ECF No. 221-1 at ¶ 21.  Ms. Maimin also explains that Webull's counsel also prepared for, and appeared at, status conferences scheduled by the Court regarding the Plaintiff's Exchange Act Claim.  *Id*.  Given this, the number of hours expended by Webull's attorneys and support staff defending the Plaintiff's Exchange Act Claim is reasonable.

But the Court observes that the hourly rates billed by Webull's attorneys and support staff in connection with this case are substantially higher than the comparable hourly rates set forth in the Fitzpatrick Matrix.  In this regard, Ms. Maimin represents to the Court that the attorneys and professional support staff working on this case billed at the following hourly rates for 2024 and 2025, respectively:

| Timekeeper | Hourly Rate (2024) | Hourly Rate (2025) |
|---|---|---|
| Doreen Edelman (Partner) | $1,270.00 | N/A |
| Rachel Maimin (Partner) | $1,295.00 | $1,425.00 |
| Markiana Julceus (Counsel) | $885.00 | $975.00 |
| Cassandra Essert (5th Year Associate) | $785.00 | $895.00 |
| Pati Candelario (4th Year Associate) | $715.00 | N/A |
| Nina Rodriguez (4th Year Associate) | N/A | $865.00 |
| Giselle Grant | $340.00 | $375.00 |
| (Paralegal) Carrie Hayter (Lowenstein Sandler Knowledge and Research Services) | N/A | $410.00 |

ECF No. 221-1 at ¶ 12.  By comparison, the Fitzpatrick Matrix provides for the following hourly rates for each of these attorneys and support staff, based on their respective years of experience, as shown below:

| Timekeeper | Fitzpatrick Hourly Rates | Requested Rates |
|---|---|---|
| Doreen Edelman (Partner) | $864.00 | $1,270.00 |
| Rachel Maimin (Partner) | $859.00 | $1,295.00 (2024) $1,425.00 (2025) |
| Markiana Julceus (Counsel) | $691.00 | $885.00  (2024) $975.00 (2025) |
| Cassandra Essert (5th Year Associate) | $639.00 | $785.00  (2024) $895.00 (2025) |
| Pati Candelario (4th Year Associate) | $557.00 | $715.00  (2024) |
| Nina Rodriguez (4th Year Associate) | $620.00 | $865.00 (2025) |
| Giselle Grant | $255.00 | $340.00  (2024) $375.00 (2025) |
| (Paralegal) Carrie Hayter (Lowenstein Sandler Knowledge and Research Services) | $255.00 | $410.00  (2025) |

And so, these figures make clear that the hourly rates billed by Lowenstein Sandler exceed the corresponding Fitzpatrick Matrix hourly rates for every experience level represented in this case.

While not dispositive of the issue, the Court uses the Fitzpatrick Matrix as a guide to determine the reasonableness of requested attorney's fees.  L.R. App. B (D. Md. 2025) ("These guideline rates are intended solely to provide practical guidance to lawyers and judges when requesting, challenging, and awarding fees. . . . These guidelines do not create any presumptions regarding reasonable rates.").  In this regard, Ms. Maimin represents to the Court that the rates charged by Lowenstein Sandler in this case "are commensurate with the hourly rates charged by lawyers performing similar services at a firm of [the law firm's] size."  ECF No. 221-1 at ¶ 13. To support this argument, Ms. Maimin has provided the Court with a spreadsheet generated by Thomson Reuters Financial Insights, which provides the standard hourly rates charged by

9

AmLaw 200 law firms during the period 2023 to 2025, and she states that Lowenstein Sandler's hourly rates are in alignment with these rates. *Id.* at ¶¶ 13–14.

The Court observes, however, that the hourly rates billed by Ms. Edelman, Ms. Maimin, Ms. Julceus, Ms. Essert and Ms. Rodriguez in this matter also fall above the rates shown in this spreadsheet. *See id.* at ¶¶12–20. The Court also observes that the Plaintiff is an individual and he has often proceeded without the assistance of counsel in this matter. And so, the Court must consider the Plaintiff's ability to pay the attorney's fees awarded by the Court. *In re Kunstler*, 914 F.2d 505, 523 (4th Cir. 1990) (citing *White v. Gen. Motors Corp.*, 908 F.2d 675 (10th Cir. 1990)).

Given these concerns, the Court will reduce the amount of attorney's fees awarded in this case to 10% of the total fees billed. And so, the Court AWARDS Webull attorney's fees in the amount of **$14,406.95**.

### B.    The Requested Costs Are Reasonable

As a final matter, the Court is satisfied that Webull's requested litigation costs in the amount of **$174.00** are reasonable. ECF No. 221 at 17–18. It is well-established that a prevailing party may recover costs for "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (citation modified). Such costs may include computer research and court fees. *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 468 (D. Md. 2014). Here, Webull seeks to recover costs of: (1) $50.62 for Westlaw research; (2) $5.38 in PACER charges relating to its the motion to dismiss; and (3) $118 for PACER charges relating to the sanctions briefing in this case. ECF No. 221 at 17–18; ECF No. 221-1 at ¶ 22. In this regard, Webull represents to the Court that it incurred these costs in connection with the litigation of the Plaintiff's Exchange Act Claim and Webull seeks to recover a 20% proportional allocation of costs attributable to its motion to dismiss briefing and 100% of the costs attributable to its Rule 11 sanctions briefing. ECF No. 221 at 7. And so, the Court is satisfied that the requested costs are reasonable and the Court AWARDS Webull costs in the amount of **$174.00**.

## V.   CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS-in-PART** Webull's motion for attorneys' fees and costs (ECF No. 221); and

(2) **AWARDS** Webull **$14,406.95** in attorneys' fees and **$174.00** in costs.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
